In the Matter of the Probate of the Last Will and Testament of SARAH McGUIRE, Deceased.

Surrogate's Court, Monroe County, January 31, 1927.

**Wills — probate — application by contestants for preliminary examination of non-resident subscribing witnesses before final objection to probate — contestants have right to demand open commission at expense of estate under Surrogate's Court Act, § 141 — contestants must bear expense of preparing their interrogatories, of witnesses whom proponent is not required to call, and their traveling expenses.**

Contestants to the probate of decedent's will, the proponent of which must examine by commission non-resident subscribing witnesses living in the State of Florida, are entitled to demand that such commission be an open one so as to afford said contestants the right to full oral or cross-examination of the witnesses at or before the filing of objections to probate. (Surrogate's Court Act, § 141.)

While the estate must bear the expense of the commission, if the contestants call before the commission witnesses whom the proponent is not required to call, said contestants must bear the proportionate expense of the fees of the stenographer and commission for taking the testimony. Furthermore, if the contestants have the cross-examination taken upon interrogatories, they must bear the expense of preparing any interrogatories which they may have submitted, and of any non-resident counsel, and they must also pay their own traveling expenses.

APPLICATION for preliminary examination of non-resident subscribing witnesses to a will before filing objections to the probate thereof.

*Frederick Wiedman* [*L. B. Bacon* of counsel], for the proponent.

*Arthur Rathjen* [*Percival D. Oviatt* of counsel], for the contestants.

FEELY, S. Testatrix, in her lifetime, resided and had her home in the city of Rochester, N. Y., where some of her real property is located. She also owned some improved real property in the State of Florida.

The writing propounded and filed for probate in this court as her last will and testament purports to have been subscribed by her in the State of Florida, and to have been attested there by two persons, who then were and still are residing in the State of

Florida. It is undisputed that their testimony can be obtained there without any more difficulty than is ordinarily incident to taking testimony by commission.

Upon the return of the citation for probate herein, appearances were filed for parties in interest, who, in view to a possible contest, have demanded, in connection with such commission, a preliminary examination of the non-resident subscribing witnesses to this will before filing objections to the probate thereof. The proponents argue that the possible contestants are not entitled thereto, either orally or by written interrogatories, because the subscribing witnesses are not in the State of New York. The demandants urge that such examination be had by written interrogatories, or orally, if the court so order; but, in any event, without imposition of pecuniary terms upon them. This amounts to asking the estate to bear the expense of such examination. The proponent's argument is based in part upon the history of the revision of the statutory provisions in point, which must now be reviewed briefly.

Before taking up the changes in surrogate's practice made in 1914, it may help to say that there can be no doubt of the proponent's duty to take out a commission to take the testimony of the subscribing witnesses in Florida, for the Surrogate's Court Act continues, without substantial change, the former Code provision (Code Civ. Proc. § 2620) to the effect that where the subscribing witness " is absent from the state and it is shown that his testimony can be obtained with reasonable diligence, the surrogate may, in his discretion, and shall upon the demand of any party, require his testimony to be taken by commission." (Surrogate's Court Act, § 142.)

Owing to the peculiar nature of a last will as a private instrument, and to the materiality of the immediate circumstances in which it was executed, equally unknown, as a rule, to those about to be cut off by probate thereof; and owing to the wide range usually taken by an issue as to testator's ability and freedom at the time he subscribed it, especially where the execution occurred away from his home and in a distant State, it was judicially established in 1903, or rather a decision then made has never since been questioned, that an open commission was fitting and proper in a contested probate of a will executed in another State where the testator was sojourning at the time it was executed. (*Matter of Anderson,* also entitled, *Corbin* v. *Anderson,* 84 App. Div. 268.)

The revision left the proponent still under another duty, namely, to submit his subscribing witness and other witnesses in chief to an examination by the contestant, if demanded before the close of the testimony before the surrogate. This was and still is a cross-examination of them, with this anomalous feature, that it

affords the basis of raising a contested issue before the surrogate, as it frequently did in the broader practice before the revision, when after a contest had been begun before the surrogate, the cross-examiner really had in mind a later action to be begun in the Supreme Court to set aside the will, regardless of the decree in the surrogate's proceeding.

Bearing in mind that the revision made no change in those two correlative landmarks, viz., the proponent's duty to take out a commission on demand, which could properly be an open one, and the possible contestant's right to what might be somewhat likened to a broad examination before trial, or even before issue raised, of his adversary's case in chief, we take up the detail of the changes made in 1914 by the revisers.

For many years before 1914, the law in point was contained in the latter part of section 2618 of the Code of Civil Procedure, which was replaced in 1914 by a different provision, first known as section 2611 of the Code of Civil Procedure, now as section 141 of the Surrogate's Court Act. Following is the latter part of the former section: " * * * Any party, who contests the probate of the will, may by a notice filed with the surrogate at any time before the proofs are closed, require the examination of all the subscribing witnesses to a written will, or any other witness, whose testimony the surrogate is satisfied may be material; in which case, all such witnesses, who are within the state and competent and able to testify, may be so examined." (Code Civ. Proc. § 2618.)

The substituted provision of 1914 (Code Civ. Proc. § 2611, now Surrogate's Court Act, § 141) is this: " * * * Any party to the proceeding, before filing objections to the probate of said will, may request the oral examination of the subscribing witnesses thereto, and may examine such witnesses and any other witness produced by the proponent before the surrogate, without first filing objections to the probate of such will." (Surrogate's Court Act, § 141.)

For many years before 1914 such examination was to be had, upon a contested probate, by a demand " before the proofs are closed." This implied a trial, down to that point, such as trials then were before the surrogate, who by such demands to call witnesses was often embarrassed in trying to comply and yet preserve the semblance of a trial in what was thus very often turned into an inquisition, which was very often a bootless one, for it will be remembered that while section 2618 was in force and these " surrogate's witnesses " were available, the surrogate's decree in probate did not prevent a later retrial of the same issue in the Supreme Court. In that period probate proceedings were often

used, under guise of a contest, merely as a means of feeling out, in advance of the real trial, the strength or weakness of the proponent's case. Before the revision a similar abuse in our then Municipal Court practice led to the taking away of the former right to a new trial of the facts, with a jury, in County Court, on a so-called appeal.

One of the main features of the revision of 1914 was the giving of the right of trial by jury in Surrogate's Court and the making conclusive the surrogate's decree in probate, by taking away the right of action to set aside the will in Supreme Court, except in extraordinary cases. " Surrogate's witnesses " were abolished, and the contestant's right to examination was remodeled, but not so as to wholly remove from surrogate's practice all trace of that old anomaly. As part of that reform the revisers state in their note to the substitute section (Code Civ. Proc. § 2611, now Surrogate's Court Act, § 141), above quoted, that " this section provides for *full oral* or cross-examination without filing objections. This often averts a contest. Provision for ' surrogate's witnesses ' repealed."

The revision added new provisions on objections found in section 2611 of the Code of Civil Procedure, now section 147 of the Surrogate's Court Act, to this effect: " Such objections must be filed at or before the close of the testimony taken before the surrogate on behalf of the proponent, or at such subsequent time as the surrogate may direct, and if a jury trial of any issue is desired the same shall be demanded in the objections."

The revisers' note to this provision is this: " Notice, in new § 2611, provision for oral or cross-examination for laying *foundation* for objections. The unfair requirement that the proponent shall produce, practically all the witnesses a contestant wants to examine, provided in former § 2618 (now § 2611), is repealed."

The proponent, therefore, can still be forced to put before the surrogate his case in chief and submit it before he knows whether or not he will have to meet an issue and adduce the same testimony all over again upon the real trial. The period within which objections having that effect must be filed is " at or before the close of the testimony taken before the surrogate on behalf of the proponent, or at such later time as the surrogate may direct." (Surrogate's Court Act, § 147.)

The contestant having been given, in lieu of his former privileges as to both subscribing and " surrogate's witnesses," his modern right " for full oral or cross-examination," " for laying foundation for objections," may, under section 141 of the Surrogate's Court Act, " before filing objections to the probate of said will, request

the oral examination of the subscribing witnesses thereto and may examine such witnesses and any other witness produced by the proponent before the surrogate,   *   *   *."

This seems to mean that where the proponent must examine his non-resident subscribing witnesses outside the State by commission, the possible contestant has a right to demand that such commission shall be an open one, so as to afford him his right to full oral or cross-examination of these subscribing witnesses, at or before the submission of these proofs to the surrogate, without regard to whether an issue will be raised and the proponent put to a conclusive trial thereof. As the burden of adducing this evidence is upon the proponent, and necessarily involves a right of cross-examination, which the statute, in view of the traditional practice and the private nature of a will, has amplified, in its present modified form, to an oral examination before either submission of the proponent's case to the court, or even raising an issue, it would seem that the expense of such open commission must be borne by the estate as an incident to procedure which the proponent must take, in any event.

Mr. H. W. Jessup's keen characterization of this anomalous, traditional and still subsisting right as " a complimentary ticket for a fishing excursion " (Jessup-Redf. Surr. [1925 ed.] § 362-a) is quoted in *Matter of O'Melia* (213 App. Div. 387, 389). The court there said that until objections are filed " the preliminary examination so far as expectant contestants are concerned has the character of a deposition taken before trial." They note the likeness without saying there is a sameness here. They do not imply, as I understand the situation, that contestant must proceed independently of the proponent, nor at his own expense, to obtain this right. The purpose of the statutory provision is to enable possible objectors to gain knowledge of the facts before determining whether or not to file objections to probate. (*Matter of Woerz*, 174 App. Div. 430.)

No other cases have been found that deal with these sections in question. *Matter of Elias* (128 Misc. 122) has been cited. That proceeding lay in New York county Surrogate's Court, and one subscribing witness resided upstate, in Herkimer. The contestant was held bound to pay the witness fee and mileage, if he desired a preliminary examination of this witness in New York city. The proponent was held to be obliged to produce at his own expense only witnesses in the county of the tribunal, or so near by as to be readily available. Nothing in those rulings is decisive of the matter now in hand. The proponent there was not confronted with any issue, and could, in such case, procure his *prima facie*

Surrogate's Court, Monroe County, January, 1927.          [Vol. 128

proofs by having the will sent up to the surrogate of Herkimer county to take the examination of the Herkimer witness in that county (Surrogate's Court Act, § 74); and demandant would then be obliged to pay his own way up there to get an oral cross-examination. Those are not the present conditions; and different statutes apply.

The proponent lays stress on the phrase "produced by the proponent before the surrogate," in the latter part of section 141 of the Surrogate's Court Act, viz., " Any party to the proceeding, before filing objections to the probate of said will may request the oral examination of the subscribing witnesses thereto and may examine such witnesses and any other witness produced by the proponent before the surrogate, without first filing objections * * *." (Surrogate's Court Act, § 141.)

Proponent argues that this phrase, " produced before the surrogate," limits the demandant's right of oral preliminary examination to cases where the witness is in the State. Before the revision, after a contest in Surrogate's Court had been begun, such was the law with respect both to the then so-called " surrogate's witnesses " and the subscribing witnesses; because in those days the Code specified " all such witnesses, who are within the state, and competent and able to testify, must be so examined." (Code Civ. Proc. § 2618, as amd. by Laws of 1913, chap. 412.) Since the revision, however, the right is preliminary to, not subsequent to the beginning of a contest; and it exists now only as to proponent's witnesses, the contestant no longer having the right to demand any material witness he might specify to be produced by the proponent. The omission from the revised section of those several qualifications of both subscribing and surrogate's witnesses, especially residence, is significant in itself, and also in light of the revisers' note to section 142 that " Now the procedure for taking testimony of witnesses who cannot appear, or of witnesses who are dead or incompetent to testify, is separated and not mingled in different sections." The rule that resident subscribing witnesses must be produced and examined is subject to the qualification that, unless an issue is raised, their testimony may be taken in their own county under section 74 of the Surrogate's Court Act, as noted above in speaking of *Matter of Elias.* This revised section does not expressly limit the right of preliminary examination to witnesses within the State; but to those who, strictly speaking, are proponent's witnesses, as distinct from contestant's or surrogate's witnesses.

These words, " produced * * * before the surrogate, " must be reconciled with the contestant's right to an open commission and to a preliminary examination. If this phrase be taken to mean

actual, bodily presence before the surrogate, then it may be read to refer to witnesses for the proponent other than subscribing witnesses, and so limited to its immediate context. The proponent, however, is not limited, on the commission, to subscribing witnesses, where the will was executed outside this State; and hence this phrase should, more properly, be taken in the broader sense of all those whose testimony is presented to the surrogate in support of proponent's case in chief; because the right to file the objection — the foundation for which is this examination — can be exercised " at or before the close of the testimony taken before the surrogate," which might well be by the surrogate reading the return of the commissioner and the testimony of the non-resident witnesses whom the surrogate had never seen nor heard; and if that expression, " taken before the surrogate," be as literally construed as it is claimed " produced    *    *    *    before " him should be, then the testimony taken before the commissioner could be excluded, even though it were that of non-resident subscribing witnesses; and the right to a preliminary examination thus destroyed. I doubt that any such result could have been intended. The general object in view in this change of legislation was to authorize a preliminary examination to lay the foundation for objection and contest; and such right should be coextensive with the proponent's case, no matter how it is brought into court.

We are dealing here with a modernized form of anomalous practice provisions designed to help avert contests by furnishing the opportunity for advance knowledge of the facts about the hitherto private writing claimed to be a last will; and this opportunity is not only coextensive with proponent's direct proof, whether by commission or otherwise, but also may be extended to a date subsequent to the submission of proponent's case, with the possible result that the proponent will have to prove his case all over again, if objections be filed. Such procedure is planned so as to be advantageous to the possible contestant, and correspondingly burdensome, at the outset, to the proponent; and accordingly these remedial provisions should be liberally construed.

What examination I have been able to give this matter leads me to these conslusions, which, in my opinion, seem to be sound:

1. That the proponent can be compelled to take the testimony of the subscribing or other witnesses in Florida by commission;

2. That in taking the testimony there by commission, in any form, the testator's estate must, in any event, bear the expenses of the preparation of the commission, the fees of the commissioner, stenographer and of any non-resident counsel to assist the proponent;

3. That the proponent has the election to take the direct testi-

mony supporting his case either on interrogatories or by an open commission;

4. That the parties demanding a preliminary examination of such witnesses as proponent may call before the commissioner have the option of having their cross-examination taken at the expense of the estate as to the fees of the commissioner and stenographer by an open commission, or upon interrogatories; and that contestants must bear the expense of preparing any interrogatories they may have submitted, and any non-resident counsel fees and their own traveling expenses;

5. That if the contestants call before the commissioner any witness whom the proponent is not obliged to call and does not call, the contestants shall bear the proportionate expense of the fees of the stenographer and commissioner for taking the testimony of such witness.

Assuming the contestants' rights in the premises are not so broad or absolute as has been stated herein, this court, for the reasons set out above, would be inclined to use its discretion to order an open commission at the expense of the estate, within the limits outlined above, unless the proponent stipulates to bring the subscribing witnesses from Florida to Rochester to testify.

Let an order be submitted on February 3, 1927, at ten-thirty A. M. accordingly.