OPINION OF THE COURT
Michael A. Mazzone, J.
In this contested probate proceeding it appears that Clifton Westover, the decedent, a resident of Fulton County and 82 years of age, died in Spartansburg, South Carolina, on December 1, 1988, survived by his brother, Oliver Westover, as his only distributee. It further appears that exactly two weeks before his death, the decedent executed a last will and testament on November 17, 1988, now offered for probate, excluding his brother and leaving his entire estate to the proponent, Maureen Delahanty Rumrill, and to one Daniel M. Rumrill, strangers of the blood, both of whom reside in South Carolina. The will was attested to before three witnesses, all of whom reside in South Carolina.
On the return of the citation, Oliver Westover demanded an examination of the attesting witnesses and since has filed his objections to the probate of the will.
Although no issue has been raised as to the objectant’s right to examine the attesting witnesses, a dispute has arisen as to where the examination shall be held and who must bear the expense of such examination.
The position of the proponent seems to be that once the *471 decedent’s will is presented to the court with an affidavit of the attesting witnesses authorized by SCPA 1406, the requirements of SCPA 1404 (1) have been met and the burden of compelling the production of the attesting witnesses is upon the party seeking to depose such attesting witnesses. In support of this position, the proponent refers the court to Powers, Supplementary Practice Commentaries to SCPA 1404 for 1977 (McKinney’s Cons Laws of NY, Book 58A [1989 Pocket Part], at 58). There, the case of Estate of Muentes (NYU, July 1, 1976, at 10, col 3 [Sur Ct, NY County]) is cited and is said to follow the decision in Matter of Elias (128 Misc 122). The decision in Matter of Muentes (supra) is not readily available to the court, but the commentator states that the court in that case ruled that it would issue an order directing the witnesses, who lived outside the county and were said by proponent to be not within his control, to appear for examination by the contestant át a time and place to be fixed in the order, but that the witnesses’ fees as provided in CPLR 8001 must be paid by the contestant, who would also have to serve the necessary papers on the witnesses. The commentator also notes (Powers, 1977 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1404 [1989 Pocket Part], at 59) that the decision quoted with approval Surrogate Foley’s statement in Matter of Elias (supra, at 123) that "the duty of compelling the attendance of a witness [is imposed] upon the party seeking the examination”, and it refused to direct the proponent to produce the witnesses for examination.
The contestant, on the other hand, takes the position that the proponent must produce the witnesses to be examined prior to the trial and attempts to distinguish Matter of Muentes (supra) from the situation in the instant case by relying on certain facts mistakenly attributed to Matter of Muentes (supra), but which are actually found in Matter of Elias (128 Misc 122). A more apposite case, contestant suggests, is Matter of Clarke (49 Misc 2d 146, mod 28 AD2d 1082), the modification resulting from a decision of the Surrogate in the same case reported as Matter of Clarke (52 Misc 2d 965). This case, it is contended, makes it clear that it is the proponent’s responsibility to produce the witnesses in New York State or to pay the expenses of a commission held outside of the State of New York.
In a probate proceeding, the proponent must proceed to prove the will by the examination or affidavits of the attesting witnesses. Before admitting a will to probate, the Surrogate’s *472 Court is required by statute to inquire particularly into all the facts and must be satisfied with the genuineness of the will, the validity of its execution, the competency of the testator in all respects to make a will at the time of executing it, and the freedom of the testator from restraint at the time of executing it (SCPA 1408 [1], [2]). Such inquiries must be made whether or not there is opposition to the probate of the will (Matter of Mulligan, 40 AD2d 136, 139). Moreover, the consent alone of all interested parties is not sufficient to admit a will to probate. By statute (SCPA 1408), the Surrogate must still be satisfied as to the genuineness of the will and the validity of its execution (Matter of Hughson, 97 Misc 2d 427, 431). Generally, where there is no contest, or where the issuance and service of process has been waived by all the interested parties, who are of full age and sound mind, the court will not go beyond the testimony of the attesting witnesses. Here, however, objections have been filed and a full inquiry by the court will be required.
Proponent’s reliance upon the affidavit of the attesting witnesses authorized by SCPA 1406 to prove the will of the decedent and entitle it to probate in accordance with the requirements of SCPA 1404 is misplaced. Such an affidavit may not be used when a party entitled to process in the proceeding raises objection thereto or the court, for any other reason, requires that the witness or witnesses be produced and examined (SCPA 1406 [1] [a], [b]). Although the section does not prescribe the method by which a party may object to the use of a SCPA 1406 affidavit, it is clear in this case that the objectant, by his demand for an examination of the attesting witnesses, has objected to the simplified SCPA 1406 procedure. In addition, courts in the past, prior to the adoption of the Uniform Rules for Trial Courts (22 NYCRR), instituted local rules limiting the use of the SCPA 1406 affidavit. One example of a case where such an affidavit would not be accepted was "where the date of execution [of the will] is within three months of the date of death” (22 NYCRR 1810.5 [a] [6], formerly a rule of Bronx County Sur Ct). Here, the will was executed two weeks prior to the decedent’s death and this fact would be an additional reason for the court to require that the attesting witnesses be produced and examined. With proof by an SCPA 1406 affidavit being unavailable to the proponent, it becomes necessary to determine how proof of decedent’s will is to be submitted and who must bear the expenses thereof.
In Estate of Muentes (NYU, July 1, 1976, at 10, col 3 [Sur *473 Ct, NY County], supra), the subscribing witnesses presumably lived in the State of New York, but outside of New York County, and allegedly were not within the control of the proponent. The decision in that case apparently relied heavily upon language in Matter of Elias (128 Misc 122, supra) to the effect that a proponent would find himself in a difficult position if he had to produce a recalcitrant or hostile witness, or one not within his control, merely at the request of a contestant. In Matter of Elias (supra), it did not appear that the subscribing witness, a resident of Herkimer, New York, was either recalcitrant or hostile, or not within proponent’s control. As a matter of fact, the indications in that case were to the contrary as the only concern of the proponent was that he did not want to pay the usual subpoena fees and reasonable expenses of the witness while she was in New York City for the examination. The decision in that case simply relied upon the applicability of the provisions of the Civil Practice Act, the predecessor of the CPLR, to proceedings in Surrogate’s Court and concluded that fees and reasonable expenses of a witness must be paid by the party seeking the examination. As noted by Powers in his Commentaries, nothing was said in either decision of the requirement in SCPA 1404 (1) that except as otherwise provided in article 14, two at least, of the attesting witnesses must be produced before the court and examined if they are within the State and competent to testify. Also worth noting in the Commentary (Powers, 1977 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 1404 [1989 Pocket Part], at 59) is the observation that SCPA 1404 (1) is flexible enough so that the two decisions in Muentes and in Elias "do not become unvariable rules of practice.”
The same emphasis on the status of the witness as being recalcitrant or hostile, or not within the control of the proponent is evident in two cases citing Elias (supra). In Matter of Felenstein (144 Misc 345), where the proponent produced 2 of the 3 subscribing witnesses, who were laymen, but refused to produce the third, an attorney and the apparent draftsman, the same Surrogate who decided Elias held that the attorney witness had to be produced and the court would issue an order to show cause directed to him for such purpose, after noting that there was no claim by proponent that the witness was recalcitrant or not within proponent’s control. In the second case, Matter of Wolfle (46 Misc 2d 808), the court, following Elias, held that where the witness is hostile and recalcitrant *474 the contestant should bear the burden of subpoenaing the witness and paying the witness fees.
In Matter of Clarke (49 Misc 2d 146, supra), cited by objectant in support of his position, such concerns were not present. There, 2 of the 3 attesting witnesses, both of whom were attorneys, had been fully examined, and the third witness, then a resident of North Carolina, was to be made available for examination at a time and place agreed upon. A short time before the scheduled date, the attorney for the contestants advised proponents’ counsel that he was to be out of town on the agreed date and requested an adjournment. The witness, unfortunately, had already left North Carolina for New York by car and could not be notified of the postponement. Later, the contestants moved to have the witness examined at the expense of the estate, either in New York, or by having a commission issue to take her testimony in North Carolina. It was under these circumstances that the court said it did not feel that the estate should bear the cost of bringing the witness to New York the second time and held that the contestants could examine the witness personally or by commission, but that the expense of the same had to be borne by the contestants, with the understanding that if the contestants were successful in setting aside the probate of the decedent’s will, the court would entertain an application to fix the cost of the examination as a disbursement of the estate. As it developed, both attorneys traveled to North Carolina to examine the witness. At the outset of the examination, proponents’ counsel discovered for the first time that the witness had previously given a statement to representatives of the contestant’s attorney (the number of the contestants apparently having been reduced to one). Because of the refusal of the latter to provide his adversary with a copy of the statement, the scope of the examination was confined to the testamentary acts of execution. Contestant’s attorney then moved to compel a full and complete examination of the witness and also for reimbursement as a charge against the estate for their expenses to be incurred in a second trip to North Carolina. Proponents’ counsel countered with a cross motion for production of the statement. The cross motion was granted and the motion was denied, the court holding that proponents’ counsel was entitled to full disclosure. In addition, the court observed that it had the duty to inquire into all of the facts and circumstances and would require production of the statement whether or not requested by proponents in *475 order that all relevant facts would be before the court (Matter of Clarke, 52 Misc 2d 965). On appeal from the original order directing that the oral testimony of the witness be taken in North Carolina (49 Misc 2d 146), the order was modified to comply with the Surrogate’s decision requiring the production of the statement, and, as so modified, was affirmed (28 AD2d 1082).
The facts in the instant case are more similar to the facts in Matter of Clarke (supra) than they are to the cases relied upon by the proponent. Here, we have a will of a Fulton County resident executed in the State of South Carolina witnessed by three residents of that State who are not alleged to be recalcitrant or hostile, or not within the control of the proponent and who are beyond the reach of the processes of the court. Where the witnesses to be examined do not reside within the State of New York, obviously it will not be possible to compel their appearance before the Surrogate either by means of a subpoena or, as suggested in the opinion in Matter of Elias (128 Misc 122, supra), by service of the order of the Surrogate, as was done in Estate of Muentes (NYU, July 1, 1976, at 10, col 3 [Sur Ct, NY County], supra). This distinction apparently was recognized by the Surrogate who decided both Matter of Wolfle (46 Misc 2d 808, supra) and Matter of Clarke (supra). In the former, the contestant had to subpoena the witnesses and bear the expense, while in the latter the nonresident witness was required to submit to oral examination in North Carolina, the cost of which had to be borne by contestant only because the witness had previously been made available by the proponents.
A case strikingly similar to the instant case and reported in the same volume of law reports as Matter of Elias (supra) is the case of Matter of McGuire (128 Misc 679). In that case, decedent resided and had her home in New York State and also owned some improved property in Florida. The writing propounded as her last will and testament was subscribed by her in Florida and attested to by two persons who were then and continued to be Florida residents. In that situation, at a time when affidavits made out of court were not an allowable substitute for testimony of the attesting witnesses, the court stated that it was the duty of the proponent to take out a commission to take the testimony of the subscribing witnesses in the State of Florida (citing Surrogate’s Ct Act § 142, now SCPA 1405 [2]). The same is no less true in the instant case since the SCPA 1406 affidavits are not available to the propo *476 nents for the reasons already mentioned. In McGuire, the court reviewed the history of the statutory revisions, distinguishing Matter of Elias, and came to the following conclusions, which this court adopts, with minor modifications in language, as the decision in the instant case:
1. That the proponent can be compelled to take the testimony of the subscribing witnesses or other witnesses out of State by commission;
2. That in taking the testimony there by commission, in any form, the testator’s estate must, in any event, bear the expenses of the preparation of the commission, the fees of the commissioner, stenographer and of any nonresident counsel to assist the proponent;
3. That the proponent has the election to take the direct testimony supporting her case either on interrogatories or by an open commission;
4. That the party demanding a preliminary examination of such witnesses as proponent may call before the commissioner has the option of having his cross-examination taken at the expense of the estate as to the fees of the commissioner and stenographer by an open commission, or upon interrogatories; and that contestant must bear the expense of preparing any interrogatories he may have submitted, and any nonresident counsel fees and his own traveling expenses;
5. That if the contestant calls before the commissioner any witness whom the proponent is not obliged to call and does not call, the contestant shall bear the proportionate expense of the fees of the stenographer and commissioner for taking the testimony of such witness.
Unless the proponent stipulates to bring the subscribing witnesses from South Carolina to Johnstown to testify, this court, for the reasons set out above, would order, in the exercise of its discretion, an open commission at the expense of the estate, within the limits outlined above.