[991 NYS2d 863]

In the Matter of the Estate of MARIE HEDBERG, Deceased.

Surrogate's Court, Kings County, August 25, 2014

### APPEARANCES OF COUNSEL

*Michael Lippman*, Hastings-on-Hudson, for objectants.

*Stephen B. Nathan*, Forest Hills, for petitioner.

*Jeffrey A. St. Clair* and *Michael Carr*, Brooklyn, for Stephen Hedberg, beneficiary.

### OPINION OF THE COURT

Diana A. Johnson, S.

Objectants' oral motion for a directed verdict, made at the close of petitioner's case and renewed after the jury's verdict, to deny probate to the will on the ground petitioner failed to make out a prima facie case on testamentary capacity is determined as follows.

Jo-Ann Sullivan (petitioner) seeks to probate an instrument dated August 25, 2006, as the last will and testament of her mother Marie Hedberg (decedent). Petitioner is the nominated executor and beneficiary of one half of the residuary under the will. Stephen Hedberg, who participated in the trial as an interested party, is decedent's son and the devisee of the real property under the will and beneficiary of one half the residuary. Patricia Moskowitz, Natalie Hedberg and John Hedberg (objectants) are decedent's children not named in the will who interposed objections to it.

At the close of petitioner's prima facie case, objectants moved for a directed verdict denying probate to the will on the ground that petitioner failed to make out a prima facie case that decedent was competent to execute the will. Specifically objectants argued petitioner failed to carry her burden of proving

decedent's competency to make a will in that only one of the two attesting witnesses to the will was called to testify. The court reserved decision on the motion. After the jury verdict finding decedent had testamentary capacity and that there was no undue influence, objectants renewed their motion.

As a preliminary matter the court notes that petitioner's argument in her posttrial memorandum that there is no authority for the court to act on this motion as the jury has rendered its verdict is incorrect (*see Matter of Slade*, 106 AD2d 914 [4th Dept 1984] [affirming lower court's granting of contestants' motion for directed verdict on issue of lack of testamentary capacity renewed after the jury's verdict finding, inter alia, that decedent had testamentary capacity]).

Pursuant to SCPA 1404, at least two attesting witnesses, if they are within the state and competent and able to testify, must be produced before the court and examined before a will is admitted to probate. The examination may cover all relevant matters, including the testator's mental competence, due execution, the genuineness of the will, and the testator's freedom from restraint and fraud (Margaret V. Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1404).

Pursuant to SCPA 1405, if it is shown by affidavit or other competent evidence that a witness cannot with due diligence be found within the state, or cannot be examined by reason of physical or mental condition, the court may in its discretion dispense with the testimony of the attesting witness (*see Matter of Smith*, 51 AD2d 1021 [2d Dept 1976]).

At trial only one of the two attesting witnesses was called to testify. No application was made by petitioner to the court to dispense with the testimony of the second attesting witness. Petitioner's argument that she did not have to produce the second attesting witness as objectants stipulated that they had no issue regarding due execution is of no moment, as even if the probate proceeding was not contested a will must still be proved by the examination or affidavit of the attesting witnesses (Charles J. Groppe et al., Harris New York Estates: Probate Administration and Litigation § 7:119 at 419 [6th ed 2014]). And where, as here, objections to probate are filed, affidavits cannot be utilized (*see* Margaret V. Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 1405, 1406; *Estate of Swierzewski*, NYLJ, Apr. 18, 1995 at 26, col 5 [Sur Ct, Nassau County 1995]; *Matter of Westover*, 145 Misc 2d

469 [Sur Ct, Fulton County 1989]). Thus petitioner's argument that it is immaterial that the second witness was not called as the self proving affidavits were introduced into evidence is unavailing.

By calling only one of the attesting witnesses, petitioner failed to establish a prima facie case for a valid will requiring at least two attesting witnesses, unless dispensed, to be produced before the court and examined before a will is admitted to probate. Having failed to call the second witness to the will, objectants' motion for a directed verdict denying probate to the purported last will and testament of Marie Hedberg dated August 25, 2006 is granted.

 Even had petitioner made an application to dispense under SCPA 1405, containing satisfactorily established grounds to dispense, and the court had granted the application, the court would not have admitted the will to probate on the testimony of the one attesting witness herein, Evie Efkarpidis.

Ms. Efkarpidis testified that her normal procedure, having witnessed over 50 wills for the attorney draftsman Stephen Nathan, was to speak briefly to the person, ask his/her name, date of birth, talk about the weather, and at times ask who lives with the person. In this proceeding she testified that although she recognized her signature on the subscribing affidavit, she: did not remember decedent; did not recall when the will was executed or any comments made by Mr. Nathan to decedent prior to making the will; and had no specific recollection of anything that happened on that day regarding the execution of decedent's will.

Based on this scant testimony the court would have required further and additional proof before it would have admitted this will to probate (see Charles J. Groppe et al., Harris New York Estates: Probate Administration and Litigation § 7:140 at 432 [6th ed 2014]). And as stated in Matter of Collins (60 NY2d 466, 473 [1983]), a failure of recollection "intensifies the care and vigilance that must be exercised in examining the remaining evidence." However, the testimony of the attorney draftsman of the will raises more questions than it provides answers.

Mr. Nathan testified petitioner had contacted him by phone having obtained his number from her friend who recommended him. She told him her mother wanted to make a will but could not get to his office. He sent a "Will Questionnaire" to petitioner (petitioner's No. 2 in evidence). He didn't know whether decedent or petitioner sent the questionnaire back to

him. He did not know whose handwriting was on the questionnaire. He relied on the questionnaire and did not explore with decedent personally or by phone the questionnaire. After receiving the questionnaire back he had some phone conversations (made and received) with petitioner to fill in the blanks. He was unsure if he sent a draft of the will to petitioner or decedent. He stated petitioner took decedent to his office to execute the will, but waited outside the room while the will was executed. He had never spoken to decedent or met her until she came to his office to execute the will. He paraphrased some of the will to decedent, and asked her to go over it. He indicated that decedent took a long time going over the will suggesting that decedent carefully read the document. Decedent neither asked questions, nor indicated there were any problems with the document. He gave decedent a printed script to read out loud to the witnesses at the execution ceremony and had decedent initial the bottom of the script. After the will ceremony he made three copies (two bound, one unbound) of the will. He kept the original will, one bound copy, and the unbound copy for his files. The other bound copy he could not recall if he gave to decedent or petitioner. In response to the question of whether he had taken a family tree from decedent, he stated he did not as the questionnaire had her family on it. He knew that decedent had left four of her children out of the will. He considered the principal asset of the estate to be the house left to Stephen Hedberg. Mr. Nathan was confident decedent was clear on what she wanted, and that the will represented what she wanted.

Pursuant to SCPA 1408, the court is charged with, before admitting a will to probate, inquiring particularly into all the facts and must be satisfied with the genuineness of the will, the validity of its execution, and that the testator at the time of executing it was in all respects competent to make a will and was not under any restraint. The court has the inherent power to require proof to its satisfaction whether or not there are objections to probate (*Matter of Mulligan*, 40 AD2d 136 [3d Dept 1972]). Where objections have been filed, a full inquiry by the court is required (*Matter of Westover*, 145 Misc 2d 469 [1989]).

The burden of proving a decedent possessed the requisite testamentary capacity rests on the proponent of the will (*Matter of Williams*, 13 AD3d 954 [3d Dept 2004]). Petitioner was required to establish: (1) decedent understood the nature and consequences of executing a will; (2) decedent knew the nature and extent of the property that she was disposing of; and (3)

decedent knew who would be considered the natural objects of her bounty, and her relations with them (*Matter of Kumstar*, 66 NY2d 691 [1985]).

Here the testimony of the one attesting witness and the testimony of the attorney draftsman failed to meet petitioner's initial burden of demonstrating decedent's testamentary capacity. On this record, petitioner failed to prove decedent knew the nature and extent of her property she was disposing of, or that she knew the natural objects of her bounty. Mr. Nathan never spoke to decedent until he met her on the day of the will's execution. There was no testimony that he ever discussed with decedent her assets or even inquired of decedent what her assets were. He never interviewed her or explored her wishes; rather he relied on the questionnaire which he testified he didn't know whose handwriting it contained. Even assuming the decedent had filled out the questionnaire, it does not mention or list any property (personal or real) decedent possessed. There was no showing she was aware she owned real property or had a retirement account which petitioner testified contained approximately $50,000. There was no showing decedent knew the natural objects of her bounty. Mr. Nathan never asked her about her next of kin, relying instead upon the questionnaire, which as already indicated, he didn't know whose handwriting was on it.

Even more disconcerting to the court is the issue of whether this will was an expression of decedent's wishes.

The purported will specifically devises the property known as 241 Manhattan Avenue to Stephen Hedberg. Mr. Nathan acknowledged this property to be the principal asset of decedent's estate. However even assuming the questionnaire was filled out by decedent, it does not mention this property other than it being listed as decedent's address. In fact question No. 8 of the questionnaire regarding specific bequests is left blank. Since Mr. Nathan admittedly never spoke to decedent until the day the will was executed, at which point the will was already drafted, it could not have been decedent who informed him that this property was an asset belonging to her and that it was to be devised to Stephen Hedberg in the will.

The purported will provides that decedent's residuary estate is to be shared by Jo-Ann R. Sullivan and Stephen T. Hedberg equally. While the questionnaire provides at question No. 10 that the beneficiaries of the balance of the estate were to be Jo-Ann R. Sullivan and Stephen T. Hedberg, question No. 10a,

which states, "[i]f the first person is deceased, then who do you want your property to go to," was left blank. Again as Mr. Nathan admittedly never spoke to decedent until the day the will was executed, at which point the will was already drafted, it could not have been decedent who informed him to provide in the will that if either Jo-Ann R. Sullivan or Stephen T. Hedberg predeceased decedent, then his/her share would go to the other.

The proof presented at trial fails to show that the will was an expression of what decedent wanted. A will offered for probate must be the will of the testator, and of no one else (*Matter of De Castro*, 32 Misc 193 [Sur Ct, Suffolk County 1900]). As was stated by the Court of Appeals in the case of *Rollwagen v Rollwagen* (63 NY 504, 517 [1876]),

> "A party who offers an instrument for probate as a will must show satisfactorily that it is the will of the alleged testator, and upon this question he has the burden of proof. If he fails to satisfy the court that the instrument speaks the language and contains the will of the testator, probate must be refused . . . . As said by Judge DAVIES, in *Delafield v. Parrish* (25 N. Y., 9, 35): 'It is not the duty of the court to strain after probate, nor in any case to grant it where grave doubts remain unremoved and great difficulties oppose themselves to so doing.' "

On this proof the court would not be satisfied to presume decedent was competent to make a will, or that the will represented her wishes.