Matter of Rosenblatt (Schloegl) (2024 NY Slip Op 50329(U))

[*1]

Matter of Rosenblatt (Schloegl)

2024 NY Slip Op 50329(U)

Decided on March 28, 2024

Surrogate's Court, Queens County

Kelley, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 28, 2024
Surrogate's Court, Queens County

In the Matter of the Judicial Settlement of the 
 Account of Lois M. Rosenblatt, Public Administrator of Queens County, 
 as Temporary Administrator of the Estate of Maria Schloegl, Deceased.

Filed No. 2021-3241/C

For Petitioner Public Administrator of Queens County: Gerard J. Sweeney, Esq., 1981 Marcus Ave #200, Lake Success, NY 11042; 718-459-9000.
For Respondent Thomas C. Puma: Christopher Ryan Clarke, Esq., Ginsburg & Misk LLP, 215-48 Jamaica Avenue, Queens Village, NY 11428; 718-468-0500.

Peter J. Kelley, S.

By decision dated November 3, 2023, the Court granted the Public Administrator of Queens County's unopposed petition to settle her account. A branch of that petition sought the admission to probate of a document dated February 9, 2010.
The Public Administrator now moves to vacate that decision and to amend her petition to seek denial of the 2010 instrument to probate.
By way of background, in February of 2010 Maria Schloegl's only distributee was her sister Anna Murray. Likewise, Anna's only distributee was the decedent Maria. Upon Maria's death, letters of administration issued to the Public Administrator on August 3, 2021.
The Public Administrator filed this accounting proceeding in April of 2023. Since no objections were filed on the return date, the Court issued a written decision on November 3, 2023, granting the petition in all respects. A decree terminating the proceeding has not issued.
Subsequently, in a separate proceeding for temporary letters of administration brought in Anna's estate, the Public Administrator indicated that she expected a probate contest and was seeking to deny probate to the instrument purporting to be Anna's will, which was also dated February 9, 2010. That document mirrors the instrument at issue here whereby Maria and Anna's estates are left to a third-party, their "beloved friend Thomas C. Puma" or, if he predeceases, to his wife Patricia Puma.
It appears that sometime between the filing of this accounting proceeding on April 25, 2023 and the filing of the petition for temporary letters in Anna's estate on June 1, 2023, the Public Administrator received information from Anna's court appointed guardian that raised concern about the validity of the instruments.
Although the Public Administrator does not specifically cite to CPLR 5015(a)(2) in her notice of motion, it appears that the contents of Anna's guardianship file contains what could be characterized as "newly-discovered evidence", which forms the basis of her motion to vacate the Court's prior decision. The Public Administrator argues that when the accounting was prepared, she did not have Anna's guardianship file, and thus, was not fully aware of the purported fraud and undue influence allegedly committed by Puma against both Anna and Maria. Based on these records, the Public Administrator contends that there is a likelihood of success that the decedent Maria's purported will may be denied probate.
Puma, the sole residuary beneficiary under both instruments, opposes the motion contending that the Public Administrator cannot meet the CPLR 5015(a)(2) standard to vacate because she failed to establish both that the alleged newly-discovered evidence would alter the Court's decision to admit the will to probate and that the alleged newly discovered evidence could not have been discovered earlier through the exercise of due diligence.
CPLR 5015 applies when a party seeks to vacate a final judgment (see CPLR 5015; American Comm. for the Weizmann Inst. of Science v Dunn, 10 NY3d 82 [2008]). "A judgment is the determination of the rights of the parties in an action or special proceeding [and] shall refer to, and state the result of, the verdict or decision, or recite the default upon which it is based" (CPLR § 5011). Likewise, a decree is the "determination of the rights of the parties to a special proceeding" (SCPA § 601).
Here, the November 3, 2023 decision is not the equivalent of a judgment nor is it a decree. Rather, it is the finding upon which a decree would have ultimately been based. Moreover, neither party has submitted, nor has the Court signed, a decree as directed by the decision and order. Accordingly, while respondent's arguments pertaining to the vacating of judgments are well-articulated, they are simply misplaced.
More fundamentally and irrespective of the arguments set forth in the motion papers and opposition thereto, under SCPA § 1408 the Surrogate has an inherent duty to examine the circumstances surrounding the probate of a will and the appointment of a fiduciary to determine that all legal requirements have been met (see Estate of Marashi, NYLJ, Mar. 17, 2000 at Pg. 28, [col. 2][Sur Ct, New York Cnty 2000]; Matter of Hedberg, Misc 3d 651, 991 NYS2d 863 [Sur Ct, Kings Cnty 2014]; Estate of Hughson, 97 Misc 2d 427 [Sur Ct, Erie Cnty 1978]). This duty overrides all other considerations such that even if all interested parties consent to admit a will to probate, the court itself must be satisfied with the genuineness of the will (see SCPA § 1408; Estate of Spanos, NYLJ, Sep. 23, 1992 at Pg. 27 [col. 3][Sur Ct, Nassau Cnty 1992]).
The record sub-judice includes the Court Evaluator's Report which details his interviews with both Anna and the decedent and references Puma. It states in pertinent part:
According to MARIA, Mr. PUMA has been handling ANNA's finances for the last twenty years. He is not a family friend or relative. MARIA stated that she would "not recommend Mr. Puma" and that he is "definitely taking advantage, 1000%".
It also appears that the decedent Maria questioned Puma's authority to act on behalf of Anna, commented on his involvement in the sale and transfer of Anna's ownership interests in certain real property, and inquired whether Anna received any money from those sales. Such comments can hardly be classified as descriptions of a "beloved friend".
Counsel for respondent argues that the Court Evaluator's Report only addresses whether [*2]Anna required a guardian (she did), and does not address the validity of the decedent's will, the decedent's capacity, or any alleged undue influence. While superficially true regarding its original purpose, the Report's content raises serious concerns as to whether Mr. Puma's ultimate designation as the sole beneficiary of both estates was freely and voluntarily made by individuals with the capacity to do so.
In light of the above information, it would be an absolute dereliction of the Court's duty to simply rubberstamp the probate of Maria's last will and testament without even a modicum of discovery or investigation. The decision dated November 3, 2023 must, therefore, be vacated.
Turning to the second branch of the motion that seeks to amend the Public Administrator's final account of proceedings at Schedule J to deny the probate of the will, "[a] party may amend his or her pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court" (CPLR § 3025[b]). Leave to amend a pleading is committed to the court's discretion and should be freely given in the absence of prejudice or surprise to the opposing party, except where the proposed amendment is palpably insufficient or patently devoid of merit (see CPLR § 3025[b]; Edenwald Contracting Co. v New York, 60 NY2d 957 [1983]; United Fairness, Inc. v Town of Woodbury, 113 AD3d 754 [2d Dept. 2014]). 
Annexed to the moving papers is a copy of the Public Administrator's proposed amended petition for judicial settlement of her account delineating the additions and amendments sought. As discussed above, the proposed amendments are not palpably insufficient or patently devoid of merit. The guardianship file, at the very least, provides a basis for the Court to inquire as to the validity of the decedent's will.
Moreover, there is little to no surprise to respondent. The Public Administrator and Puma are already engaged in discovery surrounding the execution of the instrument offered for probate for decedent's sister Anna's will; the substance, format and provisions of which - including, inter alia, the date of execution, notary, fill in the blank naming of the residuary beneficiaries, nominated executor and substitute executor - are identical to that of the decedent's purported will. Respondent will be afforded an opportunity to participate in the discovery process and file objections to the amended accounting.
Lastly, although Puma contends that he will be prejudiced by the delay occasioned by further litigation, any resultant delay in Puma's actual receipt of his potential distribution is vastly outweighed by this Court's duty to inquire and ensure only valid instruments are admitted to probate.
Accordingly, in the Court's discretion and in the furtherance of substantial justice as mandated by SCPA § 1408, the Public Administrator of Queens County's motion to vacate the decision dated November 3, 2023 and for leave to amend the account proceedings is granted, and the decision dated November 3, 2023 is vacated.
The Public Administrator of Queens County is directed to serve a copy of this order together with the amended petition for judicial settlement of the account, in the form annexed to the moving papers, within thirty (30) days after the date of this decision and order.
This is the decision and order of this Court.
The Clerk of the Court is directed to forward a copy of this decision and order to all parties.
Dated: March 28, 2024
ACTING SURROGATE