In the Matter of the Probate of the Will of LILLIAN MULLENHOFF, Deceased. KATHRYN M. A. COX, Appellant; THE ROMAN CATHOLIC CHURCH OF ST. MARY MAGDALENE et al., Respondents.— Appeal from a decree of the Surrogate's Court, Queens County, denying probate to a paper offered as the last will and testament of the decedent. Decree reversed on the law and the facts, without costs, and the matter remitted to the Surrogate's Court for the entry of a decree admitting the will to probate and, in the discretion of the Surrogate, for the award of costs, counsel fees and expenses for the proceedings in the Surrogate's Court, and for counsel fees and expenses in the appeal to this court. The finding that the testatrix did not request the subscribing witnesses to act as such and that the will was not duly executed is reversed. Objections to the will were filed by two beneficiaries and the executor designated in a prior will executed by the decedent. The objections alleged that the decedent lacked testamentary capacity, was unduly influenced, and the will had not been duly executed. There was no proof of lack of testatmentary capacity or of undue influence. Upon the trial the contestants resisted probate on the ground that the will was not validly executed, i.e., that it was not duly published and that the subscribing witnesses were not requested to act as such by the decedent. The Surrogate held that there was due publication but denied probate on the ground that the two subscribing witnesses had not been requested to act as such. He found that these witnesses were honest and intelligent. The subscribing witnesses were members of a religious group known as the Nursing Sisters of the Sick Poor. One of the witnesses had been acquainted with the

decedent for a long time, and the other was a niece of decedent. The sole beneficiary under the will was decedent's grandniece who was not present at the time of execution of the will. The will was signed on the day prior to decedent's death in a hospital ward wherein decedent, about seventy-five years of age, was a patient. She did not expect to get well. The witnesses did not know that a will was to be executed when they went to the hospital with decedent's niece who drew the will in the hospital ward in the presence of the decedent and the witnesses. The latter sat at her bedside and signed their names in decedent's presence under the word " Witness ". The decedent told her niece in the presence of the witnesses, " I would like you to take care of everything for me ". The Surrogate has found that the script of the will was read aloud by the niece in the presence of the decedent and the witnesses. The word " Witness " was on the will. After the reading of the script, decedent said that was what she wanted, asked for the script and where she should sign. When she had signed, she said, " Thank God, that is settled." She had executed two other wills in the previous year, which were prepared by an attorney, subscribed by two witnesses, and contained the common attestation clause stating that the witnesses subscribed as such " at her request ". The attorney who drew those wills testified that she (the attorney) signed the latter one of those at decedent's request. Presumably, therefore, the decedent knew that a valid will required the signatures of two witnesses who were required to be requested to act as such by the testatrix. (Cf. *Matter of Cottrell*, 95 N. Y. 329, 339.) After the will was executed, the scrivener took possession of it without any previous discussion about such possession. The four people involved were together for several hours during which time a general discussion took place. The witnesses were not expressly requested to act as such, but a request may be implied from the conduct of the parties. (*Matter of Hunt*, 110 N. Y. 278, 281; *Hutchings* v. *Cochrane*, 2 Bradf. 295, 301–302.) The Surrogate has found that the testatrix intended to execute a will, and that she subscribed and published it. All her acts and conduct and statements before, during, and after the preparation of the script; the absence of objection when the witnesses signed in her presence after the will, with the word " Witness ", had been read; and her failure to object when the will was taken by the scrivener, established that she sanctioned the act of signing by the witnesses. (*Hutchings* v. *Cochrane, supra.*) Nolan, P. J., Carswell, Adel, Sneed and MacCrate, JJ., concur. [199 Misc. 83.]