William J. Regan, S.
The last will and testament of the testatrix bearing date the 17th day of December, 1972, was duly admitted to probate by this court on the 27th day of November, 1974, subject to a determination as to the admissibility to probate of two alleged codicils, one of which bears date the 13th day of July, 1944, but, according to both witnesses thereto, was executed the 14th day of July, 1974. The other is dated the 17th day of July, 1974. The proponent has asked the court that both codicils be denied probate on the basis that neither was validly executed. The respondents contend that it is .the duty of the proponent to offer each codicil for probate. Such contention becomes academic by reason of the obligations and duty of the Surrogate in this regard. The formal requirements for due execution of a testamentary instrument are set forth by the Legislature in EPTL 3-2.1. Subdivision 1 of SCPA 1408 clearly states that “ the court must inquire particularly into all the facts and must be satisfied with the genuineness of the will and the validity of its execution.”
The court shall first direct its attention to the codicil dated July 13, 1944, admittedly executed the 14th day of July, 1974. The witnesses to this codicil, Phyllis M. Steiger and Estelle Bene, were examined at length on November 20,1974. It appears from such examination that Phyllis M. Steiger received a phone call from Frances Shawn (a legatee who was bequeathed $25,000 under this codicil) to witness Ethel C. Sheehan’s name on a “ paper ”. The testimony of Phyllis M. Steiger revealed that Frances Shawn handed the “ paper ” to Mrs. Sheehan with the question “Is this what you wanted signed? ”, to which Mrs. Sheehan allegedly responded, “ Yes ”. The document was signed by Mrs. Sheehan, after which time it was handed to *795 Estelle Eene who signed it and who in turn gave it to the witness, Phyllis M. Steiger, who signed it, at which point Frances Shawn said, “ That’s all ”. It further appears that this alleged codicil was prepared 'by the witness, Estelle Eene, allegedly pursuant to certain instructions received from the deceased, Ethel C. Sheehan. Such instructions were dictated by Estelle Eene to Frances Shawn, whose notes were then used by Estelle Eene to type the alleged codicil. There was some question as to whether the provisions contained in the codicil were exactly as the witness Estelle Eene recalled them. During the course of the execution of this codicil, no mention was made whether or not a will or codicil was being signed by the deceased, Ethel C. Sheehan and, as a matter of fact, the witness, Phyllis M. Steiger, alleges that she did not know until a week-after Mrs. Sheehan’s death that it was a codicil that was signed by her.
Due execution requires that the testator declare to each of the attesting witnesses that the instrument to which his signature has been affixed is his will. Here there is no proof of a declaration either express or implied. The instrument does contain the usual attestation clause, but the testimony of -the witnesses shows that the instrument was folded in such a manner when presented for their signatures as to make the reading of the same highly unlikely and almost impossible. Since the codicil was neither drawn by an attorney nor was one in attendance at the execution, there is no presumption of regularity. The lack of publication, considering all the circumstances attendant to the execution of this codicil, is fatal to the probate of same.
The codicil dated the 17th day of July, 1974, some three days before the death of the testatrix, was executed under less convincing circumstances than was that of the above-mentioned codicil. The witnesses to the codicil of July 17, 1974, John J. Steger and Alberta P. Thompson, concurred in the opinion that the deceased, Ethel C. Sheehan, was in an apparently “ coma-like ” condition at the time that they entered her room and that she said absolutely nothing during -the course of the signing of the codicil, nor did she indicate by any type of expression nodding or otherwise, that she was aware as to what was going on about her. Both witnesses agreed that the codicil was signed by the deceased with the help and 'guidance of Frances Shawn, who called both witnesses to witness the document about 10 o ’clock in the evening with the statement that Ethel 0. Sheehan might not last the evening. The deceased at this time was a woman of approximately 83 years of age. Both witnesses testified that the only words that were spoken were spoken by *796 Frances ¡Shawn, who, at the time that the codicil was allegedly signed by the deceased, stated to her, “ Now you know what you are doing ”. It was the opinion of Alberta P. Thompson that although she was aware that she was signing something in the nature of a testamentary instrument, that she was of the impression that the deceased, Ethel C. Sheehan, was not even aware that any of them were in the room. The witness, John J. Steger, stated that Frances Shawn made some attempt to introduce him to the deceased at that time, but that there was no response. Here again the court is far from convinced that the formal requirements of statute were complied with. The brief of the respondents was very carefully read and reviewed. Without going into the merits of the various citations offered by respondent, it is academic to this court that the details of execution are not so stringent that the wishes of a testator shall be thwarted where the vagueness of the testimony of witnesses is hazy by reason of forgetfulness, lapse of memory or uncertainty.
Respondent states: ‘1 The request to sign is sufficient, if made by the person superintending the execution of the will, if in the hearing of the testator and with his silent permission and approval ”. (Matter of Nelson, 141 N. Y. 152, 157.) The court is not satisfied that the testimony bears out directly or indirectly, expressly or impliedly, silent permission and approval of any kind. Respondent states that the formalities took place in one form or another and that the testimony, although confusing, contradictory, forgetful and woefully vague, is adequate enough for the Surrogate to find “ constructive ” compliance with the statute. In this respect the court finds no basis to arrive at such conclusion. The testimony particularly pertaining to the codicil of July 17, 1974 was such as to indicate to this court that the silence therein experienced by both subscribing witnesses was indictive of a complete unawareness on the part of the testatrix. Very much in point is Matter of Pulvermacher (305 N. Y. 378; also, see, Matter of Weinstock, 78 Misc 2d 182) wherein testator asked bank attendants to witness his signature on a folded piece of paper on which only a few words could be seen. The folded piece of paper was purported to be a holographic will, and although it lacked an attestation clause, the same reasoning as applied in that case applies to the case at bar. It was stated therein (p. 379): “ The solemnities required by statute and decisions for the execution of a will are based on considerations of policy which apply equally to a holographic will although there may be less strictness in the proof required where *797 the will is holographic.” One must not overlook the fact that a will is a creature of statute and, as such, the requirements of statute cannot be completely dispensed with. This court does not take issue with the arguments made by respondents that testimony of a vague nature and based on memory lapses could be supplemented from all the facts and circumstances surrounding the execution of the will. This court certainly would be willing to accept the argument that the witnesses, or at least some of them, may have known that the paper or document that was being witnessed was of a testamentary nature. However, more importantly, it is the deceased that must know that it is a testamentary document that she is signing and that she is declaring to be her last will and testament or codicil to her last will and testament at the time of execution. "What is particularly disturbing to this court is the overwhelming presence of Frances Shawn at the time of the execution of the codicil of July 14, 1974 wherein she is the beneficiary of a $25,000 bequest, and at the time of the execution of the codicil of July 17,1974 wherein she is the beneficiary of a $50,000 bequest, as well as a bequest of $5,000 per year for 15 years. It would appear that Frances Shawn was the dominant factor in the preparation of these codicils and in the alleged execution thereof. It would appear, too, that she dictated the time when the codicils were to be executed and who was to execute them. At crucial moments she spoke for and in behalf of the decedent under circumstances where the decedent, by the very testimony of the subscribing witnesses, was not aware of what was going on about her. Under these circumstances, this court feels obligated to scrutinize the details of due execution with extreme caution and suspicion. It is indeed all the facts and circumstances surrounding the execution of these alleged codicils which lead this court to the conclusion that each of said codicils is invalid in that each codicil was not duly published, and such is the decision of this court.
Subsequent to the examination of the witnesses pertaining to the within proceeding, William C'oleman, attorney for the respondent Frances Shawn, made an application to submit additional evidence which was not introduced at the time of the above-stated examination. Mr. Coleman requested particularly to have the court take the testimony of Father Ahearn and Howard Behling. He would be content also to have the testimony of Frances Shawn taken, but is reluctant to have her release whatever interest she would otherwise take under the codicils. Mr. Coleman contends that all the facts and circumstances surrounding the execution of the will and pertaining to *798 the factum thereof and having any relevancy on due execution, no matter how remote, must in all justice be heard by the court. (Matter of Mullenhoff, 278 App. Div. 963; Matter of Marley, 140 App. Div. 823.) These cases both provided for the testimony of witnesses other than subscribing witnesses in considering the formalities of due execution.
However, there is a distinction to be made in this offer of proof where the witnesses substantially are those who stand to benefit directly by the admission to probate of the codicils in question. It is apparent in his argument that Mr. Coleman fails to1 distinguish between attesting witnesses who lose their bequests by reason of EPTL 3-3.2 and the disqualification of a witness by reason of his interest in the event, as defined under CPLR 4519.
The Attorney-General, in behalf of charities that are provided for in the will, expressly states that he will object under the Dead Man’s Act (CPLR 4519) to the competency of Father Ahearn or Howard Behling to testify to any personal communications or transactions that either one of them had with the deceased. (Matter of Hennesey, 157 App. Div. 136.) Mr. Coleman has clearly stated to the court that his client, Frances Shawn, is reluctant to release her interest in the estate, nor could he represent to the court that Father Ahearn or Howard Behling is willing to release his interest in the estate. Certainly none of these witnesses has filed any formal renunciation with the court, and it is the opinion of the court that in the absence of a valid release of all his interest in the estate, a legatee is not competent to testify in this proceeding. (Loder v. Whelpley, 111 N. Y. 239.)
The decision of the court of January 20, 1975 denying this application to submit additional proof is hereby confirmed.