OPINION OF THE COURT
William J. Regan, S.
This is a proceeding to probate the last will and testament *428 of Ella F. Hughson, who died on May 12, 1978, domiciled in Erie County, New York.
Ella F. Hughson executed a number of wills during her lifetime. At the time of her death, two original wills had been filed in this court, one executed February 26, 1964, and an earlier will executed July 3, 1953. This proceeding is brought for an order to admit to probate a will executed on May 28, 1968 as a lost or destroyed will pursuant to SCPA 1407. A stumbling block in this regard is the undisputed proof that a later will was executed in October of 1970, which will was drawn by a distinguished Buffalo attorney, John H. Dittman, now deceased, and witnessed by Mr. Dittman and his then secretary, Susan N. Lichtenthal.
Testimony in this court on July 17, 1978 established that the original of the 1970 will was delivered to attorney John J. Fromen in April of 1977. Subsequent to the death of the deceased, Mr. Fromen was unable, after several exhaustive searches of his office, home and files, to locate the original of said will. Mr. Fromen testified that to his knowledge the will was never delivered by him or anyone in his office, to the deceased or her agent during her lifetime, or to anyone in her behalf thereafter. He recalls that this will nominated William E. Secor, Marine Midland Bank and Stanley Phillips as coexecutors, but does not recall any other provision contained in the will with any degree of certainty.
No copy of the 1970 will has been found despite a further search of Mr. Dittman’s old files after his death, nor was the file covering the preparation of this will, nor any of Mr. Dittman’s notes pertaining to such preparation, found. It has not been possible to prove the terms of the 1970 will sufficiently to comply with SCPA 1407. SCPA 1407 provides as follows:
"A lost or destroyed will may be admitted to probate only if
"1. It is established that the will has not been revoked.
"2. Execution of the will is proved in the manner required for the probate of an existing will, and
"3. All of the provisions of the will are clearly and distinctly proved by each of at least 2 credible witnesses or by 1 witness and a copy or draft of the will proved to be true and complete.”
In view of the testimony as above stated, it cannot be concluded that the 1970 will was deliberately revoked by the *429 deceased by destruction or otherwise during her lifetime. Compliance with the above section has not been possible. The court must assume, in view of the testimony herein, that the testatrix could not have contemplated the loss of her will by an attorney subsequent to her death. The apparent alternative to probating the 1968 will is intestacy, a result obviously not intended by the testatrix, and a result which is not advanced by the sole distributee. Certainly it is the court’s obligation to avoid intestacy if possible, and to carry out, within the realm of possibility, the intent of the deceased under the circumstances of this nature. John H. Dittman, now deceased, was an attorney who specialized in estate practice for many years. He concededly conducted the execution ceremonies for both the 1968 and 1970 wills. He retained possession of both original wills after they were executed. The 1968 will, which is now offered for probate, was witnessed by John H. Dittman and his son, Robert P. Dittman. It leaves some $525,000 to various individuals and the residuary estate, after payment of taxes, to Calvary Episcopal Church in Williamsville, and Episcopal Church Home of Western New York. Marine Midland Bank, William E. Secor and Edward H. Kryder are named as coexecutors.
Upon the hearing herein, Stanley F. Phillips, a business executive and social acquaintance of the decedent, who at various times held a power of attorney from the decedent, and prepared her income tax returns, testified that a conformed copy of the 1968 will was delivered by decedent to him in an envelope in October of 1970. The decedent at that time advised Mr. Phillips that the envelope contained her will and that she had just signed a new will naming Mr. Phillips as coexecutor, along with Marine Midland Bank and William E. Secor. He was further advised by the testatrix at that time that Mr. Phillips and his wife were named in that will as beneficiaries. Mr. Phillips retained the envelope containing the alleged copy of said will and delivered it to counsel for two of the named executors on June 1, 1978, after the decedent’s death. Neither Mr. nor Mrs. Phillips was named in the 1968 will. Mr. Phillips further testified that following the death of John H. Dittman in 1977, he received a letter from the administrator of John H. Dittman’s estate notifying him that an original will of Ella F. Hughson was being retained in Mr. Dittman’s safe-deposit box awaiting further instructions. Mr. Phillips subsequently met with Robert Newman, a lawyer who *430 was referred to in the aforesaid letter and who was recommended to Mr. Phillips to handle the legal business of the deceased. On that occasion Mr. Newman showed Mr. Phillips the original will of Ella F. Hughson referred to in said letter. Mr. Phillips stated that the will, dated October of 1970, was read by him at that time and he recalls that it named Marine Midland Bank, William E. Secor and Mr. Phillips as coexecutors. He also recalls himself and his wife being named in said will as beneficiaries of preresiduary bequests. That will also provided a bequest for William E. Secor, which reduced by 50% the bequest that is provided him in the will now offered for probate. In all other respects, Mr. Phillips recalls that the dispositive provisions of the 1970 and 1968 wills were somewhat similar. Mr. Phillips confirmed by his testimony that the 1970 will was subsequently turned over by Robert Newman to another lawyer, John J. Fromen, in April of 1977 in connection with alleged legal proceedings concerning Mrs. Hughson’s move to Virginia. It was Mr. Phillips’ testimony that this will, which was eventually turned over to John J. Fromen, was the same will Mrs. Hughson referred to in October, 1970, when she gave him the copy of the 1968 will.
Robert P. Dittman testified as a subscribing witness to the will of 1968. By his testimony the court was satisfied that the necessary formalities of execution of said will were observed and the decedent was at that time competent and under no restraint. The will was read to the deceased in the presence of Mr. Dittman prior to execution by the deceased. Robert Dittman further testified that his father, John H. Dittman, at that time, and subsequent to the execution of the will, conformed a copy of said will in his own handwriting and placed it in an envelope showing the name of his law firm and labeling the contents as a copy of the last will and testament of Ella F. Hughson. That envelope was then given to the decedent. Said Robert P. Dittman further testified that the original of that will was retained by John H. Dittman, to be placed in his firm’s safe-deposit box. This witness identified the copy of the 1968 will and the envelope in which it was contained. They are now presented to the court as the same papers John H. Dittman had given the decedent immediately after the execution ceremony. The witness identified without reservation the handwriting on the conformed copy of the 1968 will, which is herein offered for probate, as the handwriting of his father, John H. Dittman.
*431 In passing, the court stresses the point that most, if not all, of the difficulties in this case could have very well been avoided if the original 1970 will had been filed in this court, a procedure strongly advocated by this court for the past 16 years. By reason of this constant reminder to attorneys that original wills should be filed in this court as the logical place for the safekeeping thereof, we have, as of December 1, 1978, 91,472 original wills in our safekeeping files. In excess of 750 such wills were filed during this past month of November.
This application is with the consent of all parties. No one who may have an interest by virtue of the original wills filed with this court dated prior to May 28, 1968 objects to the probate of the will in question. Betty Bayles, the decedent’s sole distributee, has signed her consent to the probate of this will. In behalf of charities that are named in prior wills, an Assistant Attorney-General of the State of New York, after examination of the subscribing witness, Robert Dittman, stated his intention not to oppose the probate of the 1968 will.
 The probate of this will could be accomplished only if it is established that said will was not revoked by the execution of the 1970 will. Obviously attorney John Dittman intended that Ella F. Hughson revoke her 1968 will when the 1970 will was finally executed. Such revocation by Ella Hugh-son, of course, was in full anticipation and confidence that the original of the 1970 will would be available for probate after her death. It is elementary, of course, that consent alone of all interested parties does not suffice to admit a will to probate. By SCPA 1408, the Surrogate must satisfy himself as to the genuineness of the will and the validity of its execution. (Matter of Mclnally, 7 Misc 2d 625; SCPA 1408, subd 1.) The testimony of the subscribing witness, Robert P. Dittman, in this court’s opinion, suffices to establish the execution of the 1968 will, as well as the competency and free will of the testatrix. The witness was able to identify the document offered for probate as a copy of the will conformed by his father immediately after the execution ceremony. The attestation clause and the supervision of the execution ceremony by John H. Dittman, an experienced estate attorney, provide additional proof of due execution and capacity, it being generally presumed that a will prepared and executed under the supervision of an attorney is deemed to be a good and valid will. (Matter of Guarcello, 236 NYS2d 931; Matter of Flasza, 57 Misc 2d 347; Matter of Sheehan, 80 Misc 2d 793.)
*432 Ordinarily an original will that cannot be located after the death of a decedent is presumed to have been revoked by destruction during her lifetime. (Matter of Kennedy, 167 NY 163; Matter of Staiger, 243 NY 468; Matter of Fox, 9 NY2d 400.) SCPA 1407 (subd 1) provides a missing will may be admitted to probate only if "[i]t is established that the will has not been revoked.” Upon reviewing the testimony herein, and in view of all the circumstances presented to this court, it is the opinion of this court that revocation of the 1968 will has not been established.
If the deceased revoked the 1968 will by the execution of the 1970 will, the revocation was conditioned on the 1970 will being admissible to probate. The intent to revoke becomes a matter of interpretation. Under a little discussed doctrine called "dependent relative revocation”, the apparent intent of the testatrix is interpreted so as to give effect to her wishes. Very simply, by this doctrine, if the probate of the 1970 will failed for reasons not within the contemplation or understanding of this testatrix, the prior will, in spite of the terms of such later will, is deemed not revoked. In Matter of Macomber (274 App Div 724, 727), the court stated: "The doctrine of dependent relative revocation is functionally a rule of interpretation of intention. It has behind it a general acceptance in the English cases and a rather wide and respectful acceptance in principle in the United States. The rule seeks to avoid intestacy where a will has once been duly executed and the acts of the testator in relation to its revocation seem conditional or equivocal.” It is logical and reasonable that this doctrine should be applied in those instances where the testator cancels a will with the present intention of making a new testamentary disposition, and such new disposition is not made, or if it has been made, it fails for some other reason. Obviously, this doctrine should be applied with caution and should be applied only in that rare situation such as this where the decedent had no basis to assume that her original will would be lost or misplaced by an attorney to whom it was entrusted. It appears that this question had not been passed on by the Court of Appeals and the Macomber case appears to be the New York authority recognizing and applying the doctrine of dependent relative revocation. (The doctrine is discussed in Palmer, Dependent Relative Revocation and Its Relation to Relief for Mistake, 69 Mich L Rev 989; Warren, Dependent Relative Revocation, 33 Harv L Rev 337; 79 Am Jur 2d, Wills, §§ 563-567.)
*433 Apparently the application and extension of this doctrine to that situation where a later will is misplaced by an attorney is a matter of first impression. By virtue of EPTL 3-4.6, the revocation of a validly executed will does not revive a prior will. The charities have accordingly reserved their rights under the 1964 will in the event that the 1968 will is not admitted to probate. This court is satisfied, however, particularly by the testimony of Robert Dittman, that the 1964 will was revoked by the execution of the 1968 will herein offered for probate. There is, therefore, the possibility of intestacy in the event that the 1968 will is not admitted to probate. The result of intestacy is not desired by any of the parties herein, including the sole intestate distributee as hereinabove stated. Under all the circumstances, this court is satisfied that the intent of the deceased could only be carried out by admitting the will in question to probate. The revocation of a prior will that is usually accomplished by the execution of a later will was not, in fact, by reason of the application of the doctrine of dependent relative revocation, effected in this instance. There is, under all the circumstances, sufficient compliance with SCPA 1407 to admit to probate the copy of the will of May 28, 1968.
It is therefore the decision of this court that the copy of the will of May 28, 1968, be admitted to probate as the last will and testament of the above-named deceased, valid in all respects to pass and dispose of the real and personal property of said deceased.