*472 OPINION OF THE COURT
Eugene E. Peckham, S.
Juliana B. Sharp died September 27, 2002. She had two children: Honey Sharp Lippman, formerly known as Joan Larson Sharp, born to decedent from her marriage to Walter B. Sharp; and Lee B. Sharp, formerly known as Levon N. Moumjian (hereafter Lee), who was adopted as an adult by decedent on September 16, 1986 by order of the District Court of Harris County, Texas.
As a result of a motion to compel production of a will, Lee produced five wills of decedent dated in 1972, 1974, 1977, 1979 and 2001. The first four wills were prepared under the supervision of an attorney. The 2001 will was holographic. The 2001 will was denied probate by this court by order dated December 6, 2005 because “it was not executed and witnessed in conformity with the requirements of EPTL § 3-2.1,” although it was signed by the testatrix and notarized.
The 1979 will was a photocopy of the original, as was the 1977 will, probate of the copy of the 1979 will was also denied by this court in a decision dated February 10, 2006. “[Wjhen a will previously executed cannot be found after the death of a testator, there is a strong presumption that it was revoked by the testator” (Matter of Staiger, 243 NY 468, 472 [1926]; SCPA 1407). Based on this presumption, and proof that decedent had access to the 1979 will, probate was denied.
There are presently pending two petitions brought by Honey. The first is for probate of the original of the 1974 will of the decedent. The second is for letters of administration to be issued to her on the grounds that the 1972, 1974 and 1977 wills must be treated as having been revoked also. (EPTL 3-4.6.) Lee has filed objections to both petitions. Honey has moved pursuant to CPLR 3212 to dismiss the objections to the petition for letters of administration.
At the time of her death, Juliana had no assets other than the income from two trust funds for her benefit established by her late husband, Walter B. Sharp. The first was an inter vivos trust dated April 24, 1948 of which Bank of America is now trustee. Under this trust she received income for life with a general power of appointment. On each of the five wills produced she stated that she was exercising the power of appointment to be included in her residuary estate. In default of exercise of the power of appointment the trust indenture *473 provided that upon the death of Juliana the remainder would be paid to the living children “born to the union of trustor and Juliana B. Sharp.” Thus if Juliana died intestate without exercising the power of appointment, the residue of this trust would go to Honey, the only child born of such union.
The second trust was established in the will of Walter B. Sharp, dated March 14, 1963, together with a codicil dated June 14, 1963. Under this will a testamentary trust was established of which Bank of America is also trustee. Juliana received 50% of the income of this trust and the other 50% was to be sprinkled among Honey and her descendants. Upon Juliana’s death the entire income is paid to Honey and her descendants together with such sums from principal as the trustee in its discretion deems necessary “to generously support, maintain and educate my daughter and her descendants on a level appropriate for persons of their station in life.” Upon Honey’s death the remainder is paid to her descendants.
According to statements produced from Bank of America the value of the inter vivos trust on December 31, 2002 was $1,166,172 and it produced income of $49,387. The value of the testamentary trust on December 31, 2002 was $1,848,710 and it produced income of $64,929.
As indicated above Juliana attempted to exercise her power of appointment in each of her five wills to add the inter vivos trust corpus to her residuary estate. In this regard her provisions for the disposition of her residuary estate should be considered. The 1972, 1974 and 1977 wills all provide for the residuary to be divided one quarter to Honey and three quarters to Lee. The 1979 will and the 2001 holographic will leave the entire residuary to Lee. The 1972 and 1974 wills also contain this statement: “Since my daughter already is the beneficiary of large trusts it is with her knowledge and approval that I leave her only one-quarter UA) share of my residuary estate.”
The decision in this case must consider two somewhat conflicting lines of authority. The first line is represented by the recent case Matter of Huang (11 Misc 3d 325 [Sur Ct, NY County 2005]). The facts of Huang are similar to the present case. Decedent left eight wills, six of which were unattested and inadmissible to probate. A 2004 will was a photocopy, the original of which was in the possession of the testator and which was therefore presumed revoked. The 2004 will was properly witnessed and its execution was supervised by an attorney and it contained a clause “revoking all former wills.” The court *474 relied upon EPTL 3-4.6 (a) which provides: “If after executing a will the testator executes a later will which makes or alters the prior one, a revocation of the later will does not, of itself, revive the prior will or any provision thereof.” Thus the court held it was decedent’s clear intent to revoke all prior wills and the 1998 will was denied probate with the result that decedent died intestate.
Other cases in this line include Matter of Wylie (162 App Div 574 [3d Dept 1914]); Matter of Wear (131 App Div 875 [2d Dept 1909]); Matter of Barnes (70 App Div 523 [4th Dept 1902]); Matter of Walsh (5 Misc 2d 801 [Sur Ct, Suffolk County 1957]); and Matter of Shinn (7 Mise 2d 623 [Sur Ct, Westchester County 1956]).
The other line of cases adopts what is known as the doctrine of dependent relative revocation. The leading case of Matter of Macomber (274 App Div 724, 725 [3d Dept 1949]) defines the doctrine as follows: “The doctrine may be simply stated by saying that where the intention to revoke is conditional and where the condition is not fulfilled, the revocation is not effective.”
The facts of Macomber are also similar to this case. Testator executed a will in 1910 which after his death was found with “large diagonal lines . . . over the written text extending through more than half of it” and the words “[s]ee codicile” in testator’s handwriting were written diagonally through the text and also in the left margin. (274 App Div at 724.) Also found was an instrument in testator’s handwriting headed “[c]odicile to my will” signed by testator, but “not executed with the formality required by law.” (274 App Div at 725.) The court applied the doctrine of dependent relative revocation to admit the 1910 will to probate stating:
“Here the acts of the testator in the direction of cancellation were relative to another disposition of his property which was abortive. He himself related his marks of cancellation to the ‘codicile’ to which he made two distinct references. The reference, at least, is not open to doubt, and there is no difficulty in treating his acts as equivocal.” (274 App Div at 727.)
Other cases that have applied the doctrine of dependent relative revocation include: Matter of Tremain (169 Misc 549 [Sur Ct, Westchester County 1938], affd 257 App Div 996 [2d Dept 1939]); Matter of Hughson (97 Misc 2d 427 [Sur Ct, Erie County 1978]); Matter of Hickey (NYLJ, July 27, 1999, at 30 [Sur Ct, Nassau County]).
*475 It is axiomatic that the governing principle in will interpretation is to ascertain the intent of the testator. (Matter of Fabbri, 2 NY2d 236 [1957]; Matter of Gustafson, 74 NY2d 448 [1989].) As stated by the Third Department in Macomber, “The doctrine of dependent relative revocation is functionally a rule of interpretation of intention.” (274 App Div at 727.)
It is clear to this court that the intent of Juliana for over 30 years was to exercise her power of appointment over the inter vivos trust in order to add it to her residuary estate and to leave a substantial share of that estate to Lee. Initially that share was three fourths of the residue and later the whole residue. However that intent was frustrated because the 2001 will in her handwriting was not properly witnessed and the original of the 1979 will was lost and presumed revoked. She explained the reason for the intention to benefit Lee in her 1972 and 1974 wills by stating that her daughter Honey was already the beneficiary of other large trusts, specifically the testamentary trust with a value in 2002 of $1,848,710.
In Macomber the doctrine of dependent relative revocation was applied because the revocation of the 1910 will was conditional on the handwritten codicil. The codicil could not be admitted to probate because it was not properly executed. Here, also, Juliana’s revocation of her earlier wills was conditional on her expectation that the handwritten 2001 will could be probated, or, if not, the 1977 and 1979 wills would not be lost and deemed revoked. (Matter of Hughson, supra.) This leaves the original 1974 will which has been offered for probate and which is properly witnessed and executed.
Dependent relative revocation could not save the 1979 will which was a photocopy deemed revoked because the original was in the possession of the testatrix. Similarly the 1977 will, which has not been offered for probate but was also a photocopy, would be deemed revoked as it was in the possession of Juliana.
On the other hand, the 1974 will, which has been offered for probate, is an original properly executed and witnessed. The conditional nature of the revocation was demonstrated by the handwritten codicil whose opening words state: “I . . . hereby direct that this document be accepted as my only Last Will and Testament, to give testimony to my last wishes. This document supersedes any prior will(s) and Testament(s) I have executed.” Thus the doctrine of dependent relative revocation can apply to revive the 1974 will of Juliana. (Matter of Macomber, supra.)
Lee filed objections to the probate of the 1974 will on March 19, 2004. However, those objections allege only that the 1974 *476 will cannot be probated since it was revoked by the later 1977 and 1979 wills. But the 1979 will has been denied probate and the 1977 will, which has not been offered for probate, would be denied probate for the same reasons as the 1974 will. Furthermore, as noted above, both the 1977 and 1974 wills leave the residuary in the same proportions, three quarters to Lee and one quarter to Honey. The filed objections are therefore moot. The objections do not allege lack of testamentary capacity, fraud, undue influence or improper execution. Since objections were due to be filed on March 19, 2004 any attempt to now file new or amended objections would not be timely. (SCPA 1410.) The objections to probate of the 1974 will are dismissed.
“There is a strong presumption in favor of testate distribution and against intestacy” (11 Warren’s Heaton, Surrogate’s Court Practice § 187.04 [4] [a], at 187-141 [7th ed]). Since decedent made a will she did not intend to die intestate. (Matter of Warren, 11 NY2d 463 [1962]; Matter of Hawkes, 258 App Div 1008 [3d Dept 1940].) “Intestacy will be avoided if at all possible” (Matter of Anselmo, 12 Mise 3d 593, 595 [Sur Ct, Richmond County 2006]). Since the original 1974 will of decedent has been offered for probate, there is an alternative available to intestacy. That will carries out the intent of the testator to leave the largest share of her residuary estate to Lee.
SCPA 1408 (1) provides that the surrogate “must be satisfied with the genuineness of the will and the validity of its execution.” I am so satisfied in regard to the 1974 will of Juliana B. Sharp. All other requirements for probate having been satisfied, the March 29, 1974 will of decedent is hereby admitted to probate.
A petition for letters of administration can only be granted when the decedent left no will and thus died intestate. (SCPA 1002 [2].) Since the 1974 will of decedent has now been admitted to probate, the petition for letters of administration filed by Honey cannot be granted. The motion to dismiss the objections to letters of administration is denied. The objection to the granting of letters of administration based upon the probate of the . 1974 will is granted. The petition for letters of administration is denied.
However, the court reserves decision on who should be appointed as executor of the estate. The will nominated Lee and Houston Citizens Bank & Trust Company as coexecutors and Honey as successor executor. The Houston Bank is now Bank of America and it has renounced its appointment. In her petition
*477 for probate of the 1974 will, Honey requested the appointment of the public administrator. After a hearing on his qualifications this court previously appointed Lee as preliminary executor under the 1974 will. However, both before and during his service as preliminary executor, this court repeatedly requested Lee to file the necessary federal and New York estate tax returns for the estate and also to file the inventory required by Uniform Rules for Trial Courts (22 NYCRR) § 207.20. He did neither. He then allowed his appointment to expire on January 21, 2005 without ever petitioning for its extension or reinstatement. Thus a question arises as to whether Lee possesses the necessary understanding of the duties of an executor to be fit for the execution of the office. (SCPA 707.)
At this stage of the proceedings, it is not necessary to determine the status of Edouard Rizk, alleged husband of decedent.