Matter of Planty (Hanlon) (2024 NY Slip Op 50062(U))

[*1]

Matter of Planty (Hanlon)

2024 NY Slip Op 50062(U)

Decided on January 23, 2024

Surrogate's Court, Queens County

Kelly, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 23, 2024
Surrogate's Court, Queens County

In the Matter of the Application of Judith Planty, 
 as Successor Trustee of the HANLON FAMILY TRUST, to Vacate a Decree Granting Probate dated June 2, 2014 
 in the Estate of GRACE HANLON, Deceased.

File No. 2022-2/D

For Petitioner Judith Planty and the Roman Catholic Church of Saints Simon and Jude: Claire Steinman, Esq. and John G. Farinacci, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556 (516) 663-6600
In support for the Charitable Beneficiaries: New York State Office of the Attorney General by Deborah Yurchuk McCarthy, Esq., Charities Bureau, 28 Liberty Street, New York, New York 10005 (212) 416-8397
For Respondent: Patrick A. McGlashan, Esq., McGlashan Law Firm, P.C., 733 Third Avenue, 16th Floor, New York, New York 10017 (212)203-8738
For Respondent David G. Sewell: Richard J. Cea, Esq., Wingate, Kearney & Cullen, LLP, 111 John Street, Ste. 1040, New York, New York 10038 (718)852-5900

Peter J. Kelly, S.

Petitioner Judith Planty, the successor trustee of the Hanlon Family Trust ("Planty"), moves for summary judgment granting her application to vacate the decree granting probate issued by the Surrogate's Court, Kings County on June 2, 2014. Respondent David G. Sewell, executor under the instrument admitted to probate ("Sewell"), has filed opposition to the motion and respondent Merlene Dinnal ("Dinnal") has filed a cross-motion seeking the consolidation of the instant proceeding with her SCPA 2102 proceeding (File No. 2022-2/A); dismissal of the petitioner's summary judgment motion; and the grant of summary judgment to the executor. Finally, the Attorney General of the State of New York ("OAG") has filed an affirmation in support of the trustee's motion and in opposition to Dinnal's cross-motion.
Planty's motion papers consist of an affirmation in support by Claire Steinman, Esq. (with exhibits A through L); a memorandum of law; and an affirmation by Richard J. Cea, Esq. in reply and in opposition to a cross-motion (which includes exhibits A [which itself has exhibits A-J] and B). Sewell's opposition papers consist of the affirmation of John G. Farinacci, Esq. (containing exhibits A through D) and a memorandum of law. Dinnal's cross-motion papers include the affirmation of Patrick McGlashan, Esq. (which contains exhibits A through K) and a reply affirmation in reply by the same attorney (containing exhibits L through N).
The underlying facts are as follows: On September 11, 1997, the decedent, Grace Hanlon, executed a trust agreement entitled the Hanlon Family Trust (the "Trust"). The Trust designated [*2]the decedent as trustee during her lifetime and Planty as the successor trustee upon decedent's incapacity or death. The Trust provides that, upon the death of decedent and William Hanlon, the trust corpus and undistributed income was to be given and distributed as follows: Robert Mennell (20%); Eugene Erb (20%); Saints Simon and Jude Roman Catholic Church (10%); Irene Walmsley (10%); Richard Orenge (10%); Maryknoll Fathers and Brothers (5%); Deafness Research Foundation (5%); Covenant House (5%); Fathers of St. Edmund (5%); Eye Bank for Sight Restoration, Inc. (5%); and Mercy Boys' Home (5%). The Trust also contains the following provision:
NINTH: Notwithstanding anything to the contrary, donor may, by donor's last will and testament containing a specific reference to this agreement, revoke any payments to be made to a remainderman beneficiary under this trust and shall have the power to alter the named remaindermen beneficiaries.
On March 17, 1998, decedent and William F. Hanlon executed a deed transferring their interests in real property located at West 4th Street, Brooklyn, New York to Grace E. Hanlon. A second deed was also executed for the same property on that day, from Grace E. Hanlon to Grace E. Hanlon as Trustee. The first deed was recorded on April 20, 1998 and the second was recorded the following day on April 21, 1998. Both deeds were made returnable to the law firm of Connors & Sullivan, Esqs.
Respondent Dinnal testified that, in 2001, she received the decedent's phone number from "some random lady in a laundromat" who told her the decedent needed a home health care aide. After speaking to the decedent on the telephone, Dinnal went to the decedent's house and was hired. She further testified that, approximately ten years later, decedent asked Dinnal if she knew of an attorney, as her previous attorneys were too expensive. Dinnal indicated her daughter, Tanica Gordon ("Tanica"), was a nanny for an attorney and she would ask her if he was available. Dinnal insisted that the decedent did not reveal to her the reason she needed an attorney. Tanica also testified that she was not told the reason why decedent needed a lawyer.
Sewell, the attorney in question, testified that Tanica told him her mother's employer "...wanted a referral for an attorney to revise her will." Sewell thereafter spoke with Dinnal on the telephone and advised her that "...this was not my area of practice" and that he would be happy to make a referral. Ultimately, however, he consented to meet with decedent at her home in late March, 2011. 
At their first meeting, decedent told Sewell that she wanted to redo her will and that she didn't like the attorney she had been dealing with at the "law firm in Brooklyn, Connors & Sullivan or something" because they overcharged her. Sewell further testified that the decedent did not tell him how she wanted to change her will; that he was not given a copy of her prior will; that decedent never mentioned that she had previously prepared a trust; and that no fee was discussed. Despite having no experience in preparing a will or advising clients on estate planning matters, counsel consented to draft a will for the decedent. Thereafter he asked decedent for a copy of her prior will. While decedent did not have it available at his next visit, counsel [*3]testified that he somehow received a copy of a prior will prepared by Connors & Sullivan.[FN1]
Counsel also was given a separate handprinted document containing terms for a new Last Will and Testament (movant's Exhibit H) that was handed to him by decedent on his third visit in April. While Sewell averred he presumed the decedent was the author of the handwritten instrument, he also acknowledged that he didn't see her write it and could not recognize the handwriting. The Court notes that the decedent's middle name, Elizabeth, was twice misspelled in the document, "Elizibeth" at the beginning and "Elizebeth" in paragraph 13.
Paragraph (1) provides as follows:
My house an (sic) garage and all cantent (sic) I leave in my will to Merlene Dinnall,459 E. 51st St., Brooklyn, NY. An (sic) this will is not to be contested.
It appears that Dinnal's name and address in the third line of the paragraph was blank when counsel was handed the document and that he inserted these particulars, allegedly at the decedent's request.
Dinnal testified that decedent usually wrote in script, not in block print, that she did not recognize the print, and denied that she was the author of the document.
Sewell testified he used a will template taken from the New York State Bar Association's website because "...it was free," and that he utilized the handprinted document's provisions in drafting the document at issue. 
On April 30, 2011 Sewell visited decedent to have the will executed. On this occasion counsel brought his wife to act as one attesting witness. The second attesting witness was a neighbor, Michael Malek. Counsel testified that he read the instrument out loud to the decedent because that is what his lawyer did when he executed his own will in Connecticut.
The instrument consists of three type-written pages and contains a provision that the decedent ". . .hereby revoke all wills, codicils, and trusts heretofore made by me." Paragraph THIRD reads as follows:
I give all of my right, title and interest in my real property located at 1838 W.4th Street, Brooklyn, New York, together with all buildings and improvements thereon and all contents thereof to MERLENE DINNAL, residing at 481 E. 51st Street, Brooklyn, New York. In the event MERLENE DINNAL shall not survive me, I authorize my Executor, in his absolute discretion, to sell such all of my right, title and interest in all real and personal property described in this THIRD Paragraph and to include the proceeds in my estate for disposition as provided in this document.
The instrument contains a specific bequest of decedent's Series HH U.S. Treasury Bonds to a church and a series of general bequests to nine individuals, including Planty and John Malek, the father of the second attesting witness. The instrument bequeaths the residuary to MAKE A WISH FOUNDATION OF METRO NEW YORK and nominates Sewell as executor. 
Again, at all times involving the drafting and execution of the instruments, counsel had [*4]no knowledge that the decedent had previously deeded the real property, which comprised the overwhelming value of the estate, into an inter vivos trust and specifically testified that he never inquired concerning decedent's ownership of the real property, nor investigated the property's deed history on ACRIS.
Grace Hanlon died on October 19, 2011, a little more than three months after the instrument's execution. Sewell petitioned for the probate of the will on or about January 11, 2012, listing eleven alleged first cousins, once removed as distributees, along with Planty, and the Public Administrator of Kings County as interested parties in paragraph 6(a) of the petition. The New York Attorney General was listed under 7(a) as the will contained charitable bequests. Sewell listed the gross testamentary estate as $100,000.00 in personal property and $900,000.00 in real property. In the meantime, Sewell applied for and received preliminary letters testamentary on January 25, 2012.
On July 20, 2012, Connors & Sullivan, PLLC recorded the Trust agreement with the NYC Department of Finance, Office of the City Register, Borough of Brooklyn, as a "sundry" document effecting the subject real property.
Separately the probate proceeding continued, a citation issued, and ten of the eleven distributees, including Planty, executed waivers and consents. The counsel for the Public Administrator of Kings County filed a report dated December 10, 2013 making no mention of the deed or Trust. Curiously, and somewhat disturbingly, the Office of the Public Administrator of Kings County had no objection to the admission of the instrument to probate. Kings County Surrogate Johnson signed a decree granting probate on June 2, 2014 and letters testamentary issued to Sewell.
A year later, on or about July of 2015, Dinnal filed a turnover petition pursuant to SCPA 2102 in the Kings County Surrogate's Court indicating that she had learned of the Trust agreement and the deed of March 17, 1998 from a title search. Sewell and Planty were named as respondents and the Office of the Attorney General was added as a respondent in an amended petition.
Thereafter, by a decision and order dated August 16, 2021, Surrogate Thompson granted Dinnal's subsequent recusal motion and the estate proceedings were thereafter reassigned to Queens County Surrogate's Court. The parties then filed the instant motion and cross-motion and oppositions thereto.
The Court first notes that the only party to file a pleading in opposition to the instant petition to vacate the decree granting probate is the executor, Sewell. All of the remaining beneficiaries under the will, including Dinnal, defaulted in filing an answer. Thus, they have foregone the opportunity to present any legal or equitable argument why the decree granting probate should not be vacated. In effect, their default is an implicit consent to the relief sought in the petition (In re Estate of Summrall, 93 Misc 2d 420).
Summary judgment may be granted only where it is clear that no triable issue of material fact exists (see Alvarez v Prospect Hosp., 68 NY2d 320; Phillips v Joseph Kantor & Co., 31 NY2d 307). To defeat a motion for summary judgment, the opponent must assemble and lay bare affirmative proof to demonstrate the existence of a genuine triable issue of fact (Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27, aff'd 49 NY2d 924).
Allegations must be specific and detailed, substantiated by evidence in the record; mere [*5]conclusory assertions will not suffice (Iselin & Co. v Mann Judd Landau, 71 NY2d 420; Matter of Newman, 14 AD3d 567). The papers submitted in support of and in opposition to the motion are scrutinized in a light most favorable to the party opposing the motion. If there is any doubt as to the existence of a triable issue of fact, then the motion must be denied (Robinson v. Strong Memorial Hosp., 98 AD2d 976).
To justify the opening of a decree admitting a will to probate, the following must be shown to the satisfaction of the Court: (1) a valid excuse and the absence of willfulness, and (2) a meritorious claim (see CPLR 5015 [a] [1]; Matter of Rizzuto, 66 AD3d 1033). Where, however, there is "a defense of lack of personal jurisdiction, a party need not show a reasonable excuse and meritorious defense" (Johnson v Deas, 32 AD3d 253; Boorman v Deutsch, 152 AD2d 48, lv dismissed 76 NY2d 889).
The trustee contends that the probate decree must be vacated, pursuant to CPLR 5015 (a)(4), due to lack of in personam jurisdiction, as the Trust, and its beneficiaries thereunder, would have been adversely affected due to a clause which purportedly exercised a power of appointment. As the Court never obtained jurisdiction over them at any time in the original proceeding, the trustee contends the Court lacked in personam jurisdiction over all necessary parties and the decree must be vacated.
Planty acknowledges she signed a waiver and consent to probate in her status as a distributee on December 21, 2011, but it is undisputed that, at that time, she was not yet acting in a fiduciary capacity as trustee since she, in fact, had no knowledge of the trust's existence. Consequently, it is her position that, while as an individual, she could waive her own interests, as a fiduciary she had an obligation to protect the interests of the Trust and it's beneficiaries and, therefore, would not have consented to the admission of the instrument to probate.
It is without question that the Trust, the beneficiaries under the Trust, and the OAG were never cited and did not appear in the probate proceeding. It is also unquestioned that the Trust and the trust beneficiaries are potentially adversely affected due to the purported exercise of a power of appointment contained in the subject last will and testament. Consequently, Planty has set forth, prima facie, that in personam jurisdiction had not been obtained over the Trust, as required, at the time the decree was signed. 
Sewell raises eight points in opposition to the motion. Point one seeks denial of Planty's motion for failing to attach a copy of all pleadings. While CPLR 3212 (b) requires that motions for summary judgment be supported by a copy of the pleadings, CPLR 2001 permits a court to "disregard a party's mistake, omission, defect, or irregularity if a substantial right of a party is not prejudiced" (Avalon Gardens Rehabilitation & Health Care Ctr., LLC v Morsello, 97 AD3d 611; see CPLR 2001; Long Is. Pine Barrens Socy., Inc. v County of Suffolk, 122 AD3d 688; U.S. Bank N.A. v Eaddy, 109 AD3d 908. Although Planty failed to attach a copy of the pleadings with her motion for summary judgment, respondent Dinnal included them as exhibits in her cross-motion. Under the circumstances herein, including the extensive history of litigation between the parties, the Court finds the record is sufficiently complete and there is no proof that a substantial right of the parties in opposition to the motion was impaired by Planty's failure to submit a copy of the pleadings.
Point two contends that Planty "lacks standing in this proceeding and otherwise fails to state a legally cognizable claim for vacatur." Sewell, citing Matter of Miller (257 NY 349) and [*6]Olivieri v Olivieri (24 Misc 3d 1201[A]), argues that the trust terminated upon the decedent's death (the second of the two grantors to die); that the property vested in the remainder beneficiaries by operation of law at the time of the decedent's death; and that the Trust itself does not stand to gain or lose anything by the will and is, thus, not adversely affected by the will's purported devise of the property.
An express trust vests in the trustee the legal estate, subject only to the execution of the trust, and a beneficiary does not take any legal estate in the property, but may enforce the trust (EPTL § 7-2.1(a); see also: Cohn v U.S. Trust Co., 127 AD2d 523). When, however, the purposes for which an express trust is created ceases, the estate of the trustee also ceases (EPTL § 7-2.2). 
A mere change in circumstances, however, does not necessarily warrant a finding that the trust's purposes have ceased (Museum of American Indians v Huntington Free Library and Reading Room, 197 AD2d 64). Unlike the trust in Olivieri (supra), the Trust herein contains a number of provisions that evidence an intent by the decedent to have a successor trustee liquidate the real property in order to thereafter make distributions. First, the Court notes that paragraph Fourth of the Trust is not a specific devise of the real property, but rather appears to be in the nature of a residuary clause, directing the giving and distribution of the trust corpus and undistributed income to eleven named beneficiaries, including seven charitable organizations.[FN2]
Therefore, it does not make economic or practical sense to accept Sewell's argument that decedent intended to distribute the realty in kind to four individuals and seven charities. 
Additionally, paragraph Ninth refers to "payments" to be made to the remainder beneficiaries under the Trust. It is illogical that the decedent intended "payment" of an "in kind" distribution of real estate into eleven shares. The word payment as utilized in wills and trusts generally connotes payment of money, not "in kind" distributions of real property. Significantly, paragraph First also provides for transfers of additional property into the Trust after the death of the decedent by her will and paragraph Sixth provides for a successor trustee after decedent's death. Finally, paragraph Twelfth provides, upon the death of the decedent, for the trustee's payment of decedent's funeral and burial expenses out of the principal or income of the Trust estate.
The second half of Point two concerns whether the Trust remainder beneficiaries are adversely affected by the will. It has been judicially determined by the King's County Surrogate that the only issue left to be decided in the turnover proceeding (2022-2/A) is whether the will contains a valid exercise of the power of appointment reserved by the grantor in the Trust. SCPA § 1403 (1)(e) provides that, if the propounded will expressly refers to an instrument which created a power of appointment and purports to exercise such power of appointment, any persons designated in the instrument that created such power of appointment whose rights or interests are adversely affected by the instrument offered for probate must be issued process in the probate proceeding.
As the Trust did not terminate and the real property remained in the Trust after decedent's death, Planty had the requisite standing to bring this proceeding. Furthermore, as the issue of [*7]whether the issue of the proper exercise of a power of appointment had not yet been judicially determined in 2019, the trust beneficiaries would have been adversely affected by the admission of the will to probate and, thus, should have been cited in the probate proceeding. Additionally, as some of the trust beneficiaries are charitable organizations, the OAG should also have been cited on their behalf. While this Court has rendered a decision and decree dated January 18, 2024 finding the power of appointment was not properly executed, that does not change the fact that in 2019 the movants should have been cited and been afforded an opportunity to be heard.
Moreover, the Court's decision above does not render this issue moot. Under SCPA § 1408, the Surrogate has an inherent duty to examine the circumstances surrounding the probate of a will and the appointment of a fiduciary to determine that all legal requirements have been met (see Estate of Marashi, NYLG, Mar. 17, 2000 at Pg. 28, [col.2][Sur Ct, New York Cnty 2000]; Matter of Hedberg, 45 Misc 3d 651 [Sur Ct, Kings Cnty 2014]; Estate of Hughson, 97 Misc 2d 427 [Sur Ct, Erie Cnty 1978]). Given the former Kings County Public Administrator's abdication of its responsibility, the irregularities surrounding the preparation of execution of the will, and the fact that all beneficial interests were not provided the opportunity to be heard, further investigation is required.
Sewell contends in Point three of his opposition to this motion that the instant petition is premature and amounts to "wasteful and unnecessary litigation" and urges the Court to dispose of an associated turnover proceeding. First of all, the Court has the absolute authority to control its calendar, and therefore, this argument does not constitute a basis to deny the motion on its merits. In any event, the argument is now moot as a decision was rendered in said proceeding.
In Point four, Sewell contends that this petition is "barred" by Planty's "duly executed waiver of process and consent to probate." This contention is without merit. Judith Planty signed the waiver and consent on December 21, 2011, in her personal status as distributee. She was never cited as trustee and, obviously, could not have signed the waiver and consent on behalf of the Trust.
Sewell's Point five claims that the instant petition is barred by the equitable defense of laches. The four basic elements of laches are: (1) conduct by an offending party giving rise to the situation complained of, (2) delay by the complainant asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant (Dwyer v Mazzola, 171 AD2d 726).
It is difficult to fathom how Planty is guilty of laches in bringing the instant proceeding. The existence of the Trust was only "discovered" by Dinnal after the will was admitted to probate on June 2, 2014 and it wasn't until the turnover proceeding was commenced that both Sewell and Planty were first made aware of the Trust and deed. Thereafter a morass of litigation, commenced by Dinnal, including numerous motions and appeals, all of which were decided in favor of the trustee, took place.
The trustee signed the instant petition in 2019 and filed it with the Surrogate's Court, Kings County. A citation, however, was never issued by that Court and this proceeding, along with the turnover proceeding, lay dormant, through no fault of Planty, until both matters were transferred to the Surrogate's Court, Queens County. Additionally, Sewell has failed to set forth [*8]any injury or prejudice caused by any such delay. For these reasons, the Court finds that the defense of laches is inapplicable herein.
Sewell's Point six raises the equitable defense of judicial estoppel, claiming that, in the turnover proceeding, the trustee took the affirmative position that the will was valid and that the bequest under the will was "...not a valid exercise of a power of appointment, while never challenging the basis for probate" and that the trustee now takes contrary positions in the instant proceeding.
"The doctrine of judicial estoppel . . . 'precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed.'" (Baje Realty Corp. v Cutler, 32 AD3d 307; see also Becerril v City of New York Dept. of Health & Mental Hygiene, 110 AD3d 517). The principle of judicial estoppel applies where two elements are shown: first, the party against whom the estoppel is asserted must have argued an inconsistent position in a prior proceeding; and second, the prior inconsistent position must have been adopted by the tribunal in some manner.
A review of Planty's pleading in the turnover proceeding reveals that, contrary to Sewell's assertion, Planty's position therein is wholly consistent with her current position. Planty never argued in the turnover proceeding that the will was valid- she merely asserted that, if it was valid, it did not contain an effective exercise of the power of appointment. This is not inconsistent with her position in the instant proceeding that the instrument itself is not valid. Consequently, the doctrine of judicial estoppel is inapplicable herein.
Sewell's Point seven alleges that the instant petition is barred by the doctrine of equitable estoppel. The elements of equitable estoppel are, with respect to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. The party asserting estoppel must show with respect to itself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in its position (Wallace v BSD-M Realty, LLC, 142 AD3d 701; First Union Natl. Bank v Tecklenburg, 2 AD3d 575). In the absence of evidence that a party was misled by another's conduct or that the party significantly and justifiably relied on that conduct to its disadvantage, an essential element of estoppel is lacking (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96).
Sewell claims that ". . .Petitioner's actions individually and as Trustee prior to filing the instant Petition evinced the intent that she would not challenge the Will; an intent upon which the Executor justifiably relied in his good faith administration and distribution of [the] estate and in his defense of the Turnover proceeding."
First of all, as previously mentioned, the waiver and consent signed by Planty was made in her individual capacity before she knew of the Trust or that she was the successor trustee. Additionally, Sewell does not establish what actions Ms. Planty took in her capacity as trustee evincing an intent not to challenge the will which he relied on. Most importantly, Sewell's bare claim of reliance does not establish a "prejudicial change" in his position. The estate is still not distributed, he is in litigation involving same, and as the attorney draftsperson and nominated [*9]fiduciary of the instrument, the Court is perplexed as to how his legal position would have been "modified" by the failure of the trustee to object - particularly since it was his obligation to know of the trust's existence in the first place. Accordingly, Sewell's claim this petition is barred by the doctrine of equitable estoppel is without merit.
Sewell's final contention, point eight, is that Planty has failed to establish a substantial likelihood of success on the merits. Sewell contends that the trustee must establish there are "...no issues of fact on her likelihood of success." Essentially, Sewell's position is that, in order to be successful in this proceeding to vacate the probate decree, the trustee must establish, as a matter of law, that the instrument should be denied probate. This contention is incorrect. A party seeking vacatur must show with some degree of probability that her claim is well founded and that, if afforded an opportunity, she will be able to substantiate it (In re Leslie's Estate, 175 AD 108).
As stated previously, however, where there is a defense of lack of personal jurisdiction, a party need not show a reasonable excuse and meritorious defense (Johnson v Deas, supra; Boorman v Deutsch, supra). Nevertheless, Planty has set forth a plethora of evidence sufficient, at a minimum, to establish, prima facie, a good faith basis for filing objections to the probate of this instrument substantial likelihood of success on the merits. 
First, on the basis of undue influence, the instrument is a radical departure from the decedent's prior testamentary scheme as Dinnal, decedent's home health care attendant, who was in a confidential relationship with the decedent, is specifically devised an asset consisting of almost 90% of the estate. Where a confidential relationship exists the burden is shifted to the beneficiary of the transaction to prove the transaction fair and free from undue influence (Hearst v Hearst, 50 AD3d 959). 
Additionally, issues regarding testamentary capacity potentially exist. Planty has set forth evidence that the decedent met with Sewel on four occasions in the preparation and execution of the purported will and decedent never mentioned that she previously executed a Trust and deeded her real property, the major asset of her estate, into the Trust. It, thus, appears that decedent may not have known the nature and extent of her property at the time of the preparation and execution of the instrument and is prima facie evidence of lack of testamentary capacity (see Matter of Falkowsky, 197 AD3d 1300).
Turning to Dinnal's opposition to the motion [FN3]
(contained in her cross-motion), the bulk of it consists of statements that Planty has not set forth "...evidence of the actual exercise of undue influence nor does the motion contain any evidence to show that decedent...lacked testamentary capacity." 
Dinnal's opposition to the motion on the issue of jurisdiction is pure nonsense. She first contends, citing Surrogate Johnson's decision in Matter of Rattiner (2015 NY Slip Op. 50575[U]) that "the Hanlon Will did not need to be admitted to probate in order for title of the Property to vest in Dinnal. The Hanlon Will is itself a deed and title of the Property vested in Dinnal on the day Ms. Hanlon died." She then takes a giant leap in logic to conclude that [*10]"...because probate has no bearing on Dinnal's ownership of the Property, the contingent beneficiaries under the Hanlon Trust were never adversely affected by the admission of the Hanlon Will to probate."
Dinnal's reliance on Rattiner, however, is completely misplaced as it actually supports the opposite conclusion. The petition in Rattiner sought the vacatur of a deed an individual had signed as "sole surviving heir." The will in that case, although not probated, contained evidence establishing that the individual was, in fact, not the sole surviving heir. The Court found the deed could be declared void ab initio without the need to determine the will's validity.
Here, on the other hand, Dinnal's claim to title is solely based upon the devise contained in the purported will of April 30, 2011 as title to the subject real property had previously been placed into a Trust by recorded deed dated March 17, 1998. Thus the real property was not owned by the decedent at the time of the purported will's execution or at the time of the decedent's death. The only way Dinnal could claim valid title to the real property is by establishing that the decedent effectively exercised a power of appointment contained in the Trust by her will, which would have to be admitted to probate in order to take effect. 
Dinnal next states that, pursuant to EPTL § 10-6.1(a), an effective exercise of a power of appointment does not require an express reference to such power. However, that is subject to paragraph (b), which provides as follows:
(b) If the donor has expressly directed that no instrument shall be effective to exercise the power unless it contains a specific reference to the power, an instrument not containing such reference does not validly exercise the power.
Obviously, it is this subsection that is applicable.
Dinnal's third contention is that SCPA §1403(e) is not "relevant" as "the Hanlon Will does not refer to a power of appointment" and "reference to the power of appointment is a condition precedent to the invocation of SCPA §1403(e)." Dinnal thus posits that the trustee and trust beneficiaries were not necessary parties as delineated under the statute and therefor jurisdiction in the original proceeding was complete. The flaw in this argument however, is the failure to appreciate that SCPA 1403 acts as a floor, not a ceiling. This statute sets a minimum standard for jurisdiction subject to the Surrogate's discretion to mandate any persons whose interests could be affected be given notice and an opportunity to be heard.
As noted by the OAG in the affirmation in support of the motion for summary judgment, there are situations where parties may have standing to object under SCPA §1410 but are not mandated to be cited under SCPA §1403. The trustee and the trust beneficiaries clearly are adversely affected by the admission of a will to probate that possibly contains a proper exercise of a power of appointment divesting them of their remainder interest and thus have a right to object to the will. To ensure the finality of the probate decree, a proponent should serve every person whose interests in the estate are adversely affected by the will, even though a strict reading of SCPA §1403 does not require it (see Margaret Valentine Turano, 2011 Practice Commentaries, McKinney's Consolidated Laws of New York, SCPA 1403). For example, in Matter of Brachfeld (118 Misc 2d 200), the will revoked Totten Trust bank accounts and the Surrogate ordered service on the Totten Trust beneficiaries, holding their interests gave them standing to object and to deny them notice would be to violate due process.
In the instant matter, Planty and the trust beneficiaries were noticed of a title claim when Dinnal commenced the turnover proceeding. In that proceeding, Surrogate Johnson found that the decedent's "intent with regards to the proper exercise of her power of appointment is an issue of fact." It is indisputable that the trustee and trust beneficiaries are adversely affected by a will containing an exercise of a power of appointment.
The balance of Dinnal's opposition to Planty's motion (paragraphs 81 through 84 of her attorney's affirmation) consists of unconsequential statements that are irrelevant to the issues at hand. 
The branch of Dinnal's cross-motion seeking consolidation of the instant proceeding with the turnover proceeding is denied as such relief would be procedurally improper (see CPLR § 602[a]), and is now moot as that proceeding has been terminated. 
The Court finds that the papers submitted in opposition to the Planty's motion for summary judgment fail to raise any issue of fact or law requiring denial of the motion. Accordingly, Planty's motion for summary judgment vacating the decree granting probate is granted and Dinnal's cross-motions dismissing the summary judgment motion and granting summary judgment to Sewell are denied. The decree granting probate dated June 2, 2014 is vacated.
The probate proceeding (2022-2) is scheduled for a conference before the Court on the 15th day of February, 2024 at Courtroom 62, 88-11 Sutphin Boulevard, Jamaica, New York at 10:00 AM.
This is the decision and decree of the Court.
Dated: January 23, 2024
_________________________
SURROGATE

Footnotes

Footnote 1:None of the parties included a copy of the prior will prepared by Connors & Sullivan and the original does not appear to have been filed with the Kings County Surrogate's Court. Nor is there any explanation as to its whereabouts or contents.

Footnote 2:The five percent bequest to Sts. Simon and Jude are intended for "its general purposes... (and) for masses to be said for the repose of the souls of members of the Hanlon family."

Footnote 3:As noted previously, Dinnal did not file a pleading in this proceeding, essentially consenting to the relief requested in the petition. The Court, nevertheless, considered Dinnal's cross-motion and opposition to petitioner's motion